ECONOMY FIRE AND CASUALTY CO., Plaintiff-Appellant, *v.* RICHARD A. GORMAN *et al.*, Defendants-Appellees.

Fourth District   No. 15757

Opinion filed June 2, 1980.

James T. Whitley, Jr., of Whitley, Suter & Mancuso, of Decatur, for appellant.

Kepner and Giganti, of Springfield (Maurice W. Kepner, of counsel), for appellees Richard A. Gorman, Richard A. Gorman, Jr., and Eileene Gorman.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellee Mummert's Prescription Store, Inc.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Economy Fire and Casualty Company, filed this action for declaratory judgment in the circuit court of Sangamon County, seeking an interpretation of the coverage provided by a policy of automobile insurance issued to defendants, Richard A. and Eileene Gorman. Defendant Richard A. Gorman, Jr., the son of the insureds, was involved in a one-car collision on January 4, 1978, while driving an automobile owned by his employer, defendant Mummert's Prescription Store, Inc.

The trial court ruled that Gorman Jr.'s operation of that vehicle was covered under his parents' insurance policy, and plaintiff appeals. We reverse.

The evidence was almost entirely undisputed. On January 4, 1978, Gorman, Jr., lived with his parents. At that time, he had been working for Mummert's, delivering prescriptions, for about two months. His employer provided a 1977 Volkswagen Beetle to be used for making the deliveries. His hours were from 5 to 8 p.m., Monday through Friday, and from 9 a.m. to 6 p.m. on Saturday. Many times during the week he left at 8 p.m. to make deliveries and did not return until 8:30 or 8:45 p.m. He was told to return the car to the store when he finished making deliveries and, if no one was there, he was to put the keys in the ashtray and lock the car. The car was never furnished to him for his personal use, and he was never given permission to use the car after his working hours. On one occasion when he drove the car home instead of returning it to the store, his employer notified the police.

On January 4, 1978, Gorman, Jr., went to work as usual at 5 p.m. He left the store at 8:30 p.m. with seven or eight deliveries to make. He was not sure of the location of the street for his last delivery, so he stopped at a friend's home in the area. This was sometime after 9 or 9:30 p.m. Another friend, who was at the house, rode with Gorman, Jr., to show him where the street was. When the two returned, Gorman Jr.'s girlfriend and two other girls were there, so he stayed 30 to 45 minutes, until about 10:45 p.m. Defendant, Mary Link, then asked him to give her a ride home, and she and another girl rode with him in his employer's car. He had taken one girl home, but Mary Link was still in the car with him when the collision occurred at about 11 p.m.

Gorman, Jr., testified that the route he took was not the shortest or most direct route back to the store, and was not the usual route he took from that area of town. At one point on that route, he would have had to turn right to go to the store, and left to go to Mary Link's house, but he had not reached that point when the accident occurred.

The policy of automobile insurance issued by plaintiff to Gorman Jr.'s parents provided various types of coverage. With respect to a "non-owned automobile," the policy covered the named insured and any relative of the named insured who was a resident of the same household provided his operation of that automobile "is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission." A "non-owned automobile" was defined as one "not owned by or furnished for the regular use of either the named insured or any relative." At issue here is the question of whether the automobile used by Gorman, Jr., to deliver prescriptions was furnished for his "regular use" within the meaning of the policy.

The supreme court has stated that the term "regular use" as used in various automobile insurance policies is "not subject to absolute definition and that each case is dependent upon its own facts and circumstances." (*State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 69 Ill. 2d 103, 107, 370 N.E.2d 543, 545.) The courts have no difficulty finding "regular use" where a car is available for someone's use at any time in his complete discretion. (*Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill. App. 421, 60 N.E.2d 269.) However, an automobile need not be available to the driver for his unrestricted use at any time in order for it to be considered a vehicle furnished for his "regular use." For example, in cases in which an employee was involved in a collision during the work day while driving a vehicle furnished by his employer for business use, the courts have ruled that such a vehicle was one furnished for the employee's "regular use." (*Franey v. State Farm Mutual Automobile Insurance Co.* (1972), 5 Ill. App. 3d 1040, 285 N.E.2d 151; *Fletcher v. State Security Insurance Co.* (1969), 114 Ill. App. 2d 91, 254 N.E.2d 650.) Thus, in the instant case, had the collision occurred while Gorman, Jr., was driving his employer's vehicle during his regular working hours, that vehicle would undoubtedly be considered one furnished for Gorman Jr.'s "regular use" within the meaning of the policy, and plaintiff would not be liable for any injuries or damages arising out of the collision.

A more difficult question arises when the driver's use of the vehicle is restricted in some manner and the accident occurs when the driver is operating the vehicle in violation of those restrictions. Defendants contend that if a vehicle is furnished to an employee to be used solely for business purposes, the vehicle is not one furnished for the employee's "regular use" when the employee uses the vehicle for nonbusiness purposes.

Defendants strongly rely on the decision in *Schoenknecht v. Prairie State Farmers Insurance Association* (1960), 27 Ill. App. 2d 83, 169 N.E.2d 148, a case involving a situation very similar to the instant case. There, plaintiff's employer provided him with a car to use in his work, and at the end of the day plaintiff was required to return the car to his employer's shop. After his last call on the day in question, instead of returning the car, he drove it to visit friends. A collision occurred at about 11 p.m. that evening. The trial court found that an insurance policy issued by defendant on plaintiff's personal automobile provided coverage for this collision. On appeal, the defendant insurance company contended that coverage was not provided because the automobile involved in the collision had been furnished to plaintiff by his employer for his "regular use." The court on appeal rejected that contention, stating that plaintiff was furnished the car for use only in connection with his employer's

business working hours. The use of the car to visit friends after hours was an isolated, casual and unauthorized use of the vehicle, and thus did not come within the "regular use" exclusion.

If Gorman Jr.'s operation of his employer's vehicle at the time of the accident was for other than business purposes, the decision in *Schoenknecht* would require the trial court's determination that the vehicle was not one furnished for Gorman Jr.'s "regular use."

However, we consider *Schoenknecht* to have been overruled, *sub silentio*, in *Differding*. There, defendant, a university student attending summer school, sublet an apartment from a professor for a two-month summer term. As part of the agreement, defendant and a friend were to look after items of personal property left in the apartment, and defendant was to maintain the professor's automobile so that it would not deteriorate. The only limits placed on the use of the car were that defendant use it only during the summer and that the use be restricted to the area of the university. According to the appellate court's opinion in the case (46 Ill. App. 3d 15, 360 N.E.2d 522), a bicycle was defendant's primary use of transportation. After the end of the summer school term, defendant was involved in a collision while driving the professor's car to her home in Park Forest.

At issue was whether defendant's operation of that car came within the "regular use" exclusion in the automobile insurance policies issued by the plaintiff insurance company to defendant's father and brother. The trial court ruled in favor of the plaintiff insurance company, finding that the automobile involved in the collision was furnished or available for the frequent and regular use of the defendant. Relying at least in part on *Schoenknecht*, the appellate court in *Differding* reversed, stating that an automobile furnished for a limited period of time and strictly for local use could hardly be said to have been furnished for "regular use" when it was being used for long distance travel.

The appellate court decision in *Differding* was reversed by the supreme court, which stated, "On this record the question whether the Lieng automobile was furnished or available to Miss Differding [defendant] for her frequent or regular use was one of fact." (69 Ill. 2d 103, 107, 370 N.E.2d 543, 545.) The opinion did not discuss the question of whether defendant's deviation from the scope of permission given by the professor bore upon or prevented defendant's operation of the vehicle from being "regular use." The opinion keyed on the manner in which the automobile was "furnished or available" rather than the manner in which it was being used at the time of the collision.

■■ We interpret *Differding* as holding that the question of whether a vehicle's use is furnished to another on a "regular" basis is determined irrespective of whether it is actually being used at the time of an

occurrence in a manner contrary to the conditions upon which it was furnished. Our interpretation is supported by a noted authority on insurance which states:

"The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurer without a corresponding increase in the premium. The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use." 13 Couch, Cyclopedia of Insurance Law §45:1052 (2d ed. R. Anderson 1965).

■■ In *Differding*, the vehicle was furnished, so that it might not deteriorate, for a limited time to a person who had other primary means of transportation. Even there, the court deemed a question of fact to have been raised as to whether the furnishing was for a regular use. Here, the vehicle was furnished to Gorman, Jr., for his expected use throughout each business day for the purpose of making deliveries. Obviously, his use was not "incidental" and to have deemed his use of this vehicle to have been covered by his parents' liability policy would have greatly increased the exposure on that policy without a compensating premium. We consider his use of the vehicle to have been "regular" as a matter of law.

The order of the circuit court of Sangamon County declaring the policy of Richard A. and Eileene Gorman to provide coverage for the instant event is reversed.

Reversed.

MILLS, P. J., and TRAPP, J., concur.