675 P.2d 729

**FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Plaintiff-Appellee,**

v.

**Robert Clair ZUMSTEIN, individually and as natural father and next friend of John Hetrick Zumstein, a minor; Donna Zumstein, John Hetrick Zumstein, a minor, Joseph Cook, personal representative and surviving spouse of Audrey Laverne Cook, deceased; and Donna L. Mason, Defendants-Appellants.**

**No. 1 CA–CIV 5916.**

Court of Appeals of Arizona, Division 1.

Oct. 25, 1983.

Reconsideration Denied Dec. 20, 1983.

Crampton, Woods, Broening & Oberg by
Jan E. Cleator, Curtis D. Ensign, Phoenix,
for plaintiff-appellee.

Napier & Jones, P.C. by Robert E. Jones, Jr., Phoenix, for defendant-appellant Zumstein.

Smith, Howard & DeRoon by Ronald L. Dunham, Phoenix, for defendants-appellants Cook and Mason.

## OPINION

JACOBSON, Chief Judge.

This appeal presents the question of whether there is a factual dispute that a "non-owned automobile" used by the insured was "furnished or available" to him for regular use so as to be excluded from coverage under an automobile liability policy.

This action was instituted by appellee Farmers Insurance Company (Farmers) seeking a declaratory judgment that no coverage existed in favor of the named insureds, appellants Zumsteins, for damages and injuries sustained by Cook and Mason as a result of an automobile accident in which John Zumstein was driving a pickup owned by his employer, Kenneth Kissam. All parties moved for summary judgment. The sole issue to be determined by the court under these motions was whether the pickup driven by John Zumstein was "furnished or available for regular use," by him so as to be excluded from coverage under Farmers' policy. The trial court entered judgment in favor of Farmers and a timely appeal was taken to this court.

The facts are not in material dispute. Farmers issued an automobile liability policy insuring a 1969 Ford Mustang owned by Robert Zumstein. Mr. Zumstein's son, John, was also a named insured under that policy. John lived with his parents and was employed by Kenneth Kissam, who operated a janitorial service out of his home. Kissam owned several vehicles, one of which was a 1966 Dodge pickup truck. On October 27, 1979, John was driving the pickup when it collided with a vehicle in which appellants Cook and Mason were riding. Cook and Mason filed a complaint against the Zumsteins claiming that the negligence of John resulted in the death of Cook and injury to Mason.

John had been hired by Kissam to clean office buildings during the evening hours. Kissam told John that extra money could be earned by working during the day as well. John worked every night and many days—averaging 60 hours a week. Kissam told John upon hiring that he would be responsible for his own transportation and for transporting the cleaning supplies to each location. Initially, John used his parent's Mustang for this transportation. As previously mentioned, Farmers provided insurance coverage on the Mustang.

The Mustang broke down sometime in September, 1979 and was inoperative for about two weeks. When the Mustang first became inoperative, Kissam allowed John to drive the pickup for work purposes. Although the Mustang became operational, approximately two weeks later, John continued to use the pickup until the time of the accident some six weeks later. John retained the only set of keys to the truck with the understanding that he would keep the truck at his parents' home when not in use and Kissam could call John to get the keys when he, Kissam, needed the truck. On one occasion, Kissam used the truck for 2 weeks and John found other transportation.

John drove the pickup between ten and forty miles a day. He would drive to Kissam's residence to get the cleaning equipment and would proceed to the various jobsites. After completing his duties, John would take the equipment back to the Kissam residence, but would continue to drive the pickup. John was instructed not to use the pickup for anything but business purposes, however on several occasions he used the pickup for personal purposes.

On the night of the automobile collision with Cook and Mason, John finished work at about 10 p.m. He returned the cleaning equipment to Kissam's residence and proceeded to a friend's house. The two young men drove the pickup to purchase beer, returned to the friend's house and then drove to a midnight movie. From there,

they returned to the friend's house and after a few hours, John drove the pickup back to the Kissam residence to leave some keys he had earlier neglected to drop off. He then drove the pickup towards his residence, the accident occurring enroute.

Appellants Zumsteins, Cook and Mason (Zumstein) present three major issues for review: (1) whether the trial court erred in granting summary judgment because material issues of disputed fact exist as to whether the pickup was "furnished or available for regular use"; (2) whether the policy exclusion is ambiguous and (3) whether the doctrine of equitable estoppel gives rise to coverage under the facts presented here.

The "E–Z-Reader Car Policy" issued to Mr. Zumstein provided that Farmers would pay all damages the insured became legally obligated to pay because of bodily injury or property damage arising out of the ownership, maintenance or use of a private passenger car. The policy, however, excluded:

> 10. *Bodily injury* or *property damage* arising out of the ownership, maintenance, or use of any vehicle other than *your insured car*, which is owned by or furnished or available for regular use by you or a *family member*. (emphasis in original).

Our first inquiry, then, is whether the trial court correctly determined that there was no factual dispute that Kissam had made "available" or had "furnished" the pickup truck for John's "regular use" within the meaning of the exclusion contained in the policy.

 This court has already had occasion to review a "furnished for the regular use" exclusion.[1] In *Travelers Indemnity Co. v. Hudson,* 15 Ariz.App. 371, 488 P.2d

1008 (1971), we held that although the term "regular use" was undefined in the policy, the term denotes "customary use as opposed to occasional use or special use." *Id.* at 375, 488 P.2d at 1012. Depending on the context, the term can also mean "continuous use; uninterrupted normal use for all purposes; without limitation as to use." *Id.* We next looked to the facts of the case to determine whether the parties intended to "furnish" the car for a continuous purpose. We concluded in *Travelers* that the term "regular use" depends for its meaning upon the particular facts of each case and is susceptible to "no hard and fast rule." *Keplinger v. Mid-Century Insurance Co.,* 115 Ariz. 387, 390, 565 P.2d 893, 896 (1977).

Applying these definitions to the undisputed facts of this case, we note that John drove the pickup almost every day for at least six weeks to each worksite.[2] He had the only set of keys and had exclusive control and use of the truck but for exceptional occasions when Kissam arranged to use it. The pickup was kept at John's residence when not in use. While John was supposed to use the truck only for work, he was not required to obtain permission before each use. In fact, John did use the truck for personal purposes. Zumstein argues that these facts present a question of whether the use was "regular" in the sense that John used other means of transportation in addition to the pickup truck and Kissam furnished the truck only for business use.

Similar facts and arguments were presented to the appellate court of Illinois in *Economy Fire & Casualty Co. v. Gorman,* 84 Ill.App.3d 1127, 40 Ill.Dec. 468, 406 N.E.2d 169 (1980). There, Gorman, Jr. lived with his parents and worked part-time

---

1. Zumstein claims that the particular language of the Farmers policy has "not ever [been] interpreted by any court in any jurisdiction of the United States." Zumstein's argument is based on a hypertechnical construction of the English language. We see no significant difference between the language of the policy in *Travelers, infra,* and the exclusion involved here.

2. Zumstein alleges that there is some dispute as to whether the Mustang was out of commission throughout this period, but the testimony of both John and his father indicates that the Mustang was operating at the time of the accident. We therefore do not address the issue of whether the pickup was indeed a "substitute" vehicle for the Mustang, and whether coverage existed under the policy on this basis.

delivering prescriptions for his employer. His employer provided a car for him to use in making the deliveries, and the car was never furnished to him for his personal use. On one occasion he drove the car home rather than returning it to the store and his employer notified the police. Gorman, Jr. was involved in a one-car collision with his employer's vehicle after being employed only two months. On the evening of the accident, Gorman, Jr. drove the employer's car to a friend's home, stayed long past the hour his work was normally finished and then, in the course of giving a friend a ride home and on the way back to the store, became involved in a collision.

The Illinois court began its analysis by pointing out that:

> [C]ourts have no difficulty finding 'regular use' where a car is available for someone's use at any time in his complete discretion. (Citation omitted.) However, an automobile need not be available to the driver for his unrestricted use at any time in order to be considered a vehicle furnished for his 'regular use.'

406 N.E.2d at 171.

In reaching its decision, the court reasoned that the employer had furnished the car to Gorman, Jr. on a regular basis because, irrespective of his actual use of the car at the time of the accident, the car was:

> furnished to Gorman, Jr. for his expected use throughout each business day .... Obviously, his use was not 'incidental' and to have deemed his use of this vehicle to have been covered by his parents' liability policy would have greatly increased the exposure on that policy without a compensating premium. We consider his use of the vehicle to have been 'regular' as a matter of law. *Id.* at 173.

■ We agree with the court's reasoning in *Gorman.* As we enunciated in *Travelers, supra,* occasional or special use does not amount to "regular use." The facts of the particular case must be considered to resolve whether the use for which the vehicle was provided was intended to be for "an unusual circumstance re-

quir[ing] immediate use of the car," 15 Ariz.App. at 376, 565 P.2d 893, or whether the vehicle was intended to be used or was available for use on a routine basis. Here, the truck driven by John was "furnished to [him] for his expected use throughout each business day," *Gorman,* 406 N.E.2d at 173, and was commonly used by him. He had sole possession of the keys, kept the car at his residence, and drove the truck to worksites and home again for approximately six weeks. The fact that John's use of the vehicle at the time of the accident was in violation of the alleged restrictions Kissam placed on use of the truck does not detract from John's expected and actual use of the truck on a daily basis. It is this latter use which, because it is undisputed, renders John's use "regular" as a matter of law.

■ We further hold that accessibility to other means of transportation does not, in itself, establish "irregular use." This court has previously held that "the question of regular use is not a question of the quantum of use of the automobile, but whether the vehicle is actually or potentially used." *Coombs v. Lumbermen's Mutual Casualty Co.,* 23 Ariz.App. 207, 211, 531 P.2d 1145, 1149 (1975); *see also Volkswagen Insurance Co. v. Dung Ba Nguyen,* 405 So.2d 190 (Fla.App.1981). Therefore, the fact that John used other vehicles during the period he was using the pickup and that the truck was provided for business purposes only does not per se make his use of the truck "irregular," "occasional," or "incidental." *See, e.g., State Farm Mutual Automobile Insurance Co. v. Differding,* 69 Ill.2d 103, 12 Ill.Dec. 739, 370 N.E.2d 543 (1977) (where a vehicle was furnished for a limited time, so that it would not deteriorate, and used in a limited area, by a person who had other primary means of transportation, was furnished for "regular use").

■ Where an insured has use of or the opportunity to use a vehicle on more than an infrequent or casual basis where the use or potential use is recurring, the effect of the "furnished or available for regular

use" clause is to exclude coverage. *See Insurance Co. of North America v. Coffman,* 52 Md.App. 732, 451 A.2d 952 (1982). This comports with the clear intent of the insurance policy to provide coverage for "owned" vehicles, temporary substitutes and "unowned" cars occasionally used without exacting an additional premium from the insured. Any habitual use would increase the risk and should thus increase the premium. *Keplinger v. Mid-Century Insurance Co., supra; Romano v. Girlinghouse,* 385 So.2d 352 (La.Ct.App.1980); *see* also 12 *Couch on Insurance* 2d § 45:1072 (rev. ed. 1981). A finding that a vehicle is regularly available or furnished for use is even more compelling where, as here, the insured is not required to obtain special permission to use the vehicle and the driving is among the employee's duties. *See Insurance Co. of North America v. Coffman, supra; Winterwerp v. Allstate Insurance Co.,* 277 Md. 714, 357 A.2d 350 (1976). Because the record in this case can support no other conclusion but the one reached by the trial judge, we hold that summary judgment was proper—there being no issues of disputed material fact raised and the undisputed facts give rise to only one conclusion.

■ Zumstein next asserts that the trial judge in granting Farmers' motion for summary judgment necessarily concluded that the "E–Z Reader Car Policy" was unambiguous and that this decision was erroneous. Zumstein points to decisions in other jurisdictions wherein different interpretations have been given to the "furnished for regular use" exclusion. The question of whether a contract is ambiguous or uncertain is a question of law for the court to decide. *Coombs v. Lumbermen's Mutual Casualty Co., supra.* Here, as in *Coombs,* there is no dispute as to the wording of the policy and we find no ambiguity therein. The language in question has already been deemed by this court to be very clear, *Dairyland Insurance Co. v. Beekman,* 118 Ariz. 294, 576 P.2d 153 (App.1978), and taken in its plain, ordinary sense is easily understood by the insured to mean that no coverage exists on cars that he or his fami-

ly may have the right to use regularly. *Coombs v. Lumbermen's Casualty Co., supra.* The trial court did not err in finding the exclusion clause unambiguous.

Finally, appellant urges that Farmers is estopped from denying coverage under the exclusion because Farmers' agent misled Zumstein into believing he had coverage on John's use of the pickup when, in fact, he did not. We find this argument to be without merit.

Zumstein claims that he telephoned Farmers' agent on two occasions prior to the accident and was both times assured that John was covered by the policy. He also asserts that the agent told him, after the accident, that coverage would be afforded.

■ The general rule employed in the construction of insurance contracts, as all other written contracts, is that parol evidence is inadmissible to change, alter or vary the express terms of the written agreement. *Continental Life & Accident Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (App.1979). Evidence of oral representations is not admissible where a document is clear and unambiguous on its face. *Id.; cf. General Insurance Co. v. Truly Nolen of America, Inc.,* 136 Ariz. 142, 664 P.2d 686 (App.1983). We have already determined that the policy provision in question here is unambiguous and hence admission and consideration of conversations Zumstein had with the agent for Farmers would clearly violate the parol evidence rule. *See Continental Life & Accident Co. v. Songer, supra; Pawelczyk v. Allied Life Insurance Co.,* 120 Ariz. 48, 583 P.2d 1368 (App. 1978). Under these circumstances, the general rule stated in 3 R. Long, *The Law of Liability Insurance,* § 17.16 at 17–48 (1983), is applicable: "[N]either waiver nor estoppel can be used to create a primary coverage where none previously existed; they cannot supply coverage where the policy did not."

■ Furthermore, evidence in the form of oral representations made subsequent to the accident will not create a claim of es-

toppel against the insurer because that doctrine cannot provide coverage for risks the policy does not cover by its terms. *Sellers v. Allstate Insurance Co.*, 113 Ariz. 419, 555 P.2d 1113 (1976). Therefore, the doctrine of estoppel is unavailable to Zumstein.

We affirm the judgment entered below.

KLEINSCHMIDT, P.J., and GRANT, J., concur.