[No. 50748–1. En Banc. February 7, 1985.]

GRANGE INSURANCE ASSOCIATION, *Respondent,* v. GEORGE
A. MACKENZIE, ET AL, *Petitioners.*

*Parker, Johnson & Parker,* by *Jon C. Parker,* and *Bitar, Morgan, Peck & Bitar,* by *Douglas B. Bitar,* for petitioners.

*Madden, Poliak, MacDougall & Williamson,* by *William J. Madden,* for respondent.

PEARSON, J.—The issue presented is whether a "use of other automobiles" clause in an automobile insurance contract is effective to deny coverage where the named insured was the exclusive driver of a car that was not covered under the policy and was owned by a member of that insured's household. We hold that the facts here bring this case squarely within the exception clause. Accordingly, we affirm the Court of Appeals decision that summary judgment should have been granted to the insurer.

At the time this case arose, James MacKenzie had been living with his brother, petitioner George MacKenzie, and George's wife, for 1½ years. James suffered from Parkinson's disease, was unable to drive, and had no driver's license.

James owned one car, a Ford Fairmont, which was insured by Farmers Group Insurance. James bought the car after he could no longer drive; George was the only driver and was listed on James' insurance policy as the primary driver of the Ford. In fact, George was the only licensed driver in the household. Whenever James' car was driven, it was driven by George; however, it was driven for James' purposes only. Whenever George assisted James in getting to appointments, he drove James' car.

George owned two cars which were insured by the respondent, Grange Insurance Company (Grange). The contract of insurance included the following clause:

V Use of Other Automobiles
*If the named Insured . . . owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy with respect to said auto-*

*mobile applies . . . with respect to any private passenger automobile subject to the following provisions:*
. . .
(b) This insuring agreement does not apply:
 (1) to any automobile owned by or furnished for regular use to either the named Insured or a member of the same household other than a private chauffeur or domestic servant of such named Insured or spouse;

(Italics ours.)

On July 26, 1980, George, his wife, and James were riding in James' Ford. George, as always, was driving. They were going to a restaurant for dinner, at James' request. En route to the restaurant, they collided with a motorcycle driven by Stanley Sermonti, and Sermonti was killed. Stanley Sermonti's parents recovered the full amount under James' insurance policy with Farmers Insurance Group.

In order to obtain payment of additional damages, Stanley's parents sued George; George tendered the claim to Grange Insurance Company. The insurance company commenced a declaratory judgment action asserting that under the facts presented in this case the "use of other automobiles" clause in its policy with George relieved Grange of its duty to defend and indemnify George. Both parties moved for summary judgment.

Based on *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974), the trial court found the "use of other automobiles" clause ambiguous and resolved the ambiguity in favor of extending coverage to George. Thus, the trial court granted George's motion for summary judgment.

Grange appealed the adverse judgment. The Court of Appeals reversed the trial court, ordering that summary judgment be granted to Grange. *Grange Ins. Ass'n v. MacKenzie,* 37 Wn. App. 703, 683 P.2d 221 (1984). The court held that *Ward* must be limited to its particular facts and that the policy considerations controlling in *Ward* are inapplicable here. *Grange,* at 706. We agree that *Ward* is not controlling on the facts of this case.

In *Ward,* we held that a clause *identical* to the one at issue in this case was ambiguous and should be construed in favor of the insured.[1] In *Ward,* a father loaned his pickup truck to his minor son for the day to use for the son's purposes. The son lived at home with his parents. While driving the truck, the son was involved in an accident and fatally injured a child. The child's parents sued both father and son. The insurance on the father's truck had lapsed; however, the son owned another vehicle which was insured by Dairyland. Dairyland refused to defend the lawsuit brought against the son. Instead, it commenced a separate action seeking declaratory judgment on its liability for coverage under the "use of other automobiles" clause. The trial court found the son's use of the truck was infrequent. However, it denied coverage based on the "member of the same household" language. This court reversed.

In *Ward,* this court sought to ameliorate the harsh rule that would automatically deny coverage *whenever* members of the same household drove the uncovered car, even on an isolated occasion. As a matter of public policy, we held the insurer must specifically state such a rule, since an ordinary insured would be shocked to learn that his insurance coverage was so severely circumscribed. *Ward,* at 359. The ambiguity in *Ward* was directly related to whether an isolated use was a regular use in the common understanding of an insured.

 The facts of the present case are so different from those in *Ward* as to render the policy considerations articulated in *Ward* inapplicable here. The use here was far

---

[1]The Court of Appeals quoted the following as the language of the clause in its opinion in *Grange Ins. Ass'n v. MacKenzie,* 37 Wn. App. 703, 704, 683 P.2d 221 (1984).

 (d) This insuring agreement does not apply:

 (1) To any [other] automobile owned by or furnished for regular *or frequent* use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such insured or spouse.

(Italics ours.) This is incorrect. The clause in the present case does not include the "or frequent" language. It is identical to the clause in *Ward.*

from isolated; George drove James' car *at least* 4 to 6 times per month. More importantly, George was the exclusive driver contemplated by the owner of the car; James even named George as the primary driver on James' own insurance policy covering the car. As a matter of law, such exclusive use constitutes regular use.

While it is possible that the phrase "regular use" might be ambiguous under some factual situations such as in *Ward,* it is not at all ambiguous here. Exclusive use necessarily constitutes regular use, regardless of the purposes of that use. *See Westhaver v. Hawaiian Ins. & Guar. Co.,* 15 Wn. App. 406, 549 P.2d 507 (1976), correctly holding that it is the fact of regular use and not the *purpose* of that use that is the relevant issue. An insurance company's legitimate interest is in preventing an increase in the quantum of risk without a corresponding increase in the premium; the risk to the insurance company is related only to the amount of time the car is driven, not to the *reason* that car is driven. *Westhaver.*

An examination of the purposes of the "use of other automobiles" clauses supports the analysis and result reached in this case. The purposes of these clauses have been described as twofold:

> (1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of nonowned vehicles.

*Ward,* at 359. Thus, the purpose of these provisions is to provide coverage for isolated use without the payment of an additional premium, but to disallow the interchangeable use of other cars which are not covered by the policy. *Ward,* at 362 (Hamilton, J., dissenting).

These purposes are not met in this case, where George admittedly drove James' car at least 4 to 6 times per month, knowing he was the only driver available in the household. Such use by George is not the type of sporadic, isolated incidence of driving of a noncovered car that was

contemplated in the clause. Rather, this use significantly increased the risk to the insurer, without a corresponding increase in premiums. This court recognized in *Ward,* in stating the purposes behind these clauses, that such use unfairly burdens the insurer.

George and James MacKenzie were undisputedly members of the same household; the exclusive use of the uncovered car was by George. The clause is unambiguous as applied to these facts for the reason that the insured drove a car owned by a household member, where that use was not at all isolated. This type of use was not at issue in *Ward. See Rocky Mt. Fire & Cas. Co. v. Goetz,* 30 Wn. App. 185, 633 P.2d 109 (1981); *Westhaver.* The clause is also unambiguous here for the reason that George's use of the car is necessarily regular use because it is the *only* use.

The Court of Appeals is affirmed for the above reasons. The case is remanded to the trial court with instructions to grant summary judgment in favor of Grange.

Dolliver, C.J., Utter, Brachtenbach, and Andersen, JJ., and Cunningham, J. Pro Tem., concur.

Dore, J. (dissenting)—The majority holds as a matter of law that the car was furnished for the regular use of petitioner. Because this holding is based solely on the petitioner being contemplated as the only driver of the car and his operation of the vehicle 4 to 6 times a month, I dissent.

In this appeal, Grange Insurance Association contends that the car was used frequently by George and, therefore, the exclusion applies. George contends that the automobile was used infrequently and only with James' permission and, therefore, it follows from *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974) that George would reasonably believe his use of his brother's car would be covered by his Grange insurance policy.

The trial court correctly interpreted *Ward* to mean that coverage in these situations is excluded when (1) the automobile is owned by another household member, *and* (2) is

furnished for the regular use of the named insured. The court correctly concluded that coverage in the present case turns on what is meant by regular use; however, the court did not consider all factors necessary to determine if the use was regular. The court said George drove the car regularly but only for James' purposes; therefore, the car was not furnished for George's regular use. In effect, the trial court based its decision on the purpose behind the use of the car. While purpose of use is a factor which should be considered in deciding whether an automobile was furnished for regular use, it is not the sole criterion. In *Ward*, we held that frequency of use is an important factor in determining whether the "use of other automobiles" clause should apply.

From this record, we cannot determine how often George drove James' car. The mere fact that George was the exclusive driver of James' car does not, as a matter of law, constitute regular use. The trial court should resolve the factual issue of frequency before making a determination of whether the automobile was furnished for regular use. This cannot be done on summary judgment but can only be resolved by a trial.

The court should consider several factors in determining whether the car was furnished for George's regular use. Generally, the courts look for frequency and length of use of the automobile. For example, in *Motorists Mut. Ins. Co. v. Sandford,* 8 Ohio App. 2d 259, 221 N.E.2d 596 (1966), the court held that an exclusion identical to the one in this case did not apply when the insured had only used the vehicle a few times. In *Allstate Ins. Co. v. Humphrey,* 246 Md. 492, 229 A.2d 70 (1967), the court held that a car was not furnished for the regular use of the appellee even though the use was unrestricted because it was only on loan for 2 weeks. Conversely, in *Nationwide Mut. Ins. Co. v. Bullock,* 21 N.C. App. 208, 203 S.E.2d 650 (1974), the court concluded that the car was furnished for the insured's regular use when her use was frequent (she drove it to work daily) and the car had been available to her for 3 months.

Another factor to consider is whether the use of the borrowed car on the day of the accident was a regular or special use. In *Palmer v. Glens Falls Ins. Co.,* 58 Wn.2d 88, 360 P.2d 742 (1961), the insured had borrowed his son–in–law's car for over 2 months to use in his business. The car was in need of major repairs so the son–in–law gave his father–in–law permission to take the car to a repair shop. On the way to the shop, the father–in–law was involved in an accident. The court held that the insured was not excluded from coverage. The trip to the repair shop for major repairs was distinguishable from the regular use of the car in the insured's business including the trips he made to a gas station for routine servicing.

An additional factor to consider is whether the insured must seek permission from the owner before using the car. In *Juzefski v. Western Cas. & Sur. Co.,* 173 Cal. App. 2d 118, 342 P.2d 928 (1959), the court held that a father's car was not furnished for his son's regular use when the son only used the car on special occasions (0 to 3 times a week) *and* with his father's permission. *See also General Leasing Corp. v. Anderson,* 197 Kan. 327, 416 P.2d 302 (1966).

Restrictions on the use of the vehicle or lack thereof are also considered. In *Insurance Co. of North Am. v. Ready,* 240 So. 2d 311 (Fla. Dist. Ct. App. 1970), the court held a wife's car was furnished to her husband for his regular use when the cars were used interchangeably. *See also Cotton States Mut. Ins. Co. v. Falls,* 114 Ga. App. 812, 152 S.E.2d 811 (1966) (coverage excluded because the car was made available to the insured for his unrestricted use).

Finally, some courts have examined the purpose of the use; *i.e.,* whether the car was used for the driver's benefit. In *Giokaris v. Kincaid,* 331 S.W.2d 633 (Mo. 1960), a grandmother was temporarily living with her daughter and her daughter's family. The grandmother owned a car and both she and her daughter had a set of keys. The grandson borrowed the car one day and was involved in an accident. The court held that the grandmother's car was not furnished for the regular use of her daughter (a member of the

same household as the insured grandson). Except for this one occasion, the car had only been used by the daughter to drive her mother around on her mother's errands.

Thus, the following are the basic criteria in determining whether a car has been furnished for regular use: (1) frequency of use, (2) length of the period of use, (3) whether the use was regular or special on the day of the accident, (4) whether permission must be sought, (5) whether there are any restrictions on use of the vehicle including limiting the driver's use of the car to trips for the owner's benefit.

In the present case, the testimony is uncontroverted that George was the only person who drove the Fairmont and he always asked James' permission. We also know that the use of the car was special on the day of the accident. Further, we know that the policy behind the "use of other automobiles" clause has not been violated. Grange did not suffer an increased risk when George drove James' car. There was only one driver in the family; thus, only one car was on the road at any given time.

In addition, we know that the MacKenzies' living situation was temporary. Once James became too ill for George to care for him, George intended to send him to a rest home. The Fairmont was purchased in March 1980 and the accident occurred in July 1980. At what point in time should George have submitted an additional premium to Grange—after 1 month, after 6 months, after 2 years? Grange did not spell this out in its policy with George. It is obviously unfair to require policyholders to purchase additional premiums on the cars of *temporary* household members when the policy fails to specify the time limits. Because the insurance policy is completely void on this subject, it should be resolved in favor of the insured.

On the issue of frequency of use, the deposition testimony is inconsistent. We cannot be certain from the record how often George drove James' car. Therefore, as the Court of Appeals correctly determined, summary judgment is inappropriate on the issue of whether the car was furnished for George's regular use. A genuine issue of material facts

exists which must be resolved by trial.

In order to consider whether an automobile has been furnished for *regular* use, the trial court needs to determine frequency of use. Because this factual issue has not been determined, I would remand for trial.