METROPOLITAN PROPERTY & LIA-
BILITY INSURANCE COMPANY,
Plaintiff and Respondent,

v.

Neal W. FINLAYSON, individually and
Lee, Childs individually and as Guardi-
an ad litem of Michelle Childs, a minor,
Defendants and Appellant.

No. 860204–CA.

Court of Appeals of Utah.

March 7, 1988.

Anthony M. Thurber (argued), Salt Lake City, for defendants and appellant.

Lowell V. Smith (argued), Hanson, Dunn, Epperson & Smith, Salt Lake City, for plaintiff and respondent.

Before ORME, BENCH and BILLINGS, JJ.

ORME, Judge:

Appellant Lee Childs seeks reversal of a summary judgment entered by the trial court in favor of respondent Metropolitan Property & Liability Insurance Company. We reverse.

## FACTS

The trial court was presented with a stipulation of facts and cross-motions for summary judgment. The stipulated facts are as follows. Defendant Neal Finlayson, who is not a party to this appeal, was employed as a company mechanic by FIN-CO Brothers, Inc., a family-owned business. As part of his duties, he drove a company pickup truck in which he kept his tools, to better enable him to promptly answer calls for mechanical repairs. He was allowed to keep the truck at his home during non-business hours and to drive it to and from work each day. However, any personal use of the vehicle required the consent of FINCO management. During the four year period of his employment,

prior to March 30, 1982, Neal used the truck for personal purposes on two occasions after receiving permission from his employer. He also used the truck once or twice for local errands without permission.

On March 30, 1982, Neal and his brother Tom, who also worked for FINCO, rode to work together in the company pickup. Shortly before noon, they received instructions to break for lunch and then proceed directly to another facility owned by FINCO where their services would be needed. Contrary to those instructions, they left work and stopped at the "Animal House," a bar located at 900 South State Street in Salt Lake City. They remained in the bar until four o'clock in the afternoon, consuming a substantial but unknown volume of beer. Enroute home, the truck, driven by Neal Finlayson, collided into the rear end of a car in which Michelle Childs was an occupant. Michelle Childs was killed as a result of the accident.

Finlayson had insurance, through Metropolitan, on his personal automobile. While this policy extended coverage to Finlayson's use of vehicles not owned by him, it excluded from the definition of "non-owned automobile" vehicles which were available for his "regular use." After inquiries concerning Metropolitan's responsibility, Metropolitan brought a declaratory action to determine whether Finlayson was covered under the policy. Appellant Lee Childs intervened as a defendant.

As stated, the parties submitted cross-motions for summary judgment. The trial court denied Childs' motion and granted Metropolitan's, concluding that the vehicle Neal Finlayson was driving at the time of the accident was one available for his regular use and therefore excluded from coverage under the Metropolitan policy.

The single issue on appeal is whether the trial court correctly determined, on the stipulated facts, that Finlayson's use of the FINCO pickup constituted "regular use" within the meaning of the exclusion contained in the policy. If it did, the pickup would not be considered a "non-owned automobile" for purposes of the policy and Metropolitan would have no liability.[1] "Non-owned automobile" is defined in the Metropolitan policy, insofar as relevant, as "an automobile [2] which is neither owned by nor furnished nor available for the regular use of either the named insured or any relative...."

## PATTERN OF USAGE

Appellant argues that "regular use" means use which is consistent with a pattern or prescribed course of conduct or dealing. Since the truck was furnished to Neal Finlayson for use in the course of his employment, i.e., answering calls for and performing mechanical repairs, his use of the truck to go to and from the "Animal House" bar was outside that course, especially in view of the limitations expressly put on his use of the truck by FINCO.

Applying appellant's definition of "regular use," coverage would extend whenever a vehicle has been furnished to an employee for use in connection with his employment and the employee's use of the vehicle at the time of the accident has materially deviated from the authorized use. Some cases have taken this view. *See, e.g., Schoenknecht v. Prairie State Farmers Ins. Ass'n.*, 27 Ill.App.2d 83, 169 N.E.2d 148 (1960). *But see Economy Fire & Cas. Co. v. Gorman*, 84 Ill.App.3d 1127, 406 N.E.2d 169, 406 N.E.2d 169, 171–72 (1980) (characterizing Shoenkneckt as "overruled, sub silentio," in *State Farm Mut. Auto. Ins. Co. v. Differding*, 69 Ill.2d 103, 12 Ill.Dec. 739, 370 N.E.2d 543, 545 (1977)). In *Schoenknecht*, an employee of a public utility company was involved in an accident while driving a car furnished to him by his employer for use in connection with his

---

1. The Safety Responsibility Act, as then in effect, was not relied upon below and we are advised it is, in any event, inapplicable to this appeal as the requirements of the act were satisfied by other insurance. Accordingly, it is inconsequential in this case that the policy's definition of non-owned automobile is not consistent with Utah Code Ann. § 41–12–21 (1981). *See generally Barber v. Farmers Ins. Exchange*, 751 P.2d 248 (Utah Ct.App.1988).

2. Elsewhere, the policy defines "automobile" so as to include pickup trucks.

employment, which involved his answering complaints and servicing gas appliances. *Id.* 169 N.E.2d at 150. While driving his employer's car one evening, the employee went to visit friends rather than returning to work and enroute home ran into the rear end of another car, injuring its occupants. The court found that the employee's use of the car at the time of the accident was an "isolated, casual, unauthorized" use and was therefore not excluded by the similarly worded non-owned automobile provision of his insurance policy. *Id.* 169 N.E.2d at 156.

The Kansas Supreme Court, in *Central Sec. Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15 (1984), cited the following test for determining if an automobile is furnished for "regular use":

> The test whether an automobile is furnished for 'regular' use within an exclusionary clause is not necessarily the frequency or regularity of its use, although an infrequent and casual use by special permission on particular occasions may not constitute a furnishing for regular use. It is the nature of the use for which the vehicle is intended and to which it is put, rather than the actual duration of use, which is significant.

*Id.* at 19–20, 235 Kan. 331.

The Idaho Court of Appeals has likewise considered, in determining if a vehicle is regularly used, whether an employee's use of an employer's vehicle at the time of an accident was an "expected" use. *Universal Underwriters Ins. Co. v. Farmers Ins. Co.*, 108 Idaho 249, 697 P.2d 1263 (Ct.App. 1985). In *Universal Underwriters*, the court found the following considerations helpful in determining whether a car is "regularly" used: "Was there a purpose for the use of the car, was permission granted for that purpose, and was it being used for that purpose? Was its use at the time of the incident an expected use?" *Id.* 697 P.2d at 1265–66. Under this test, the pickup truck furnished to Finlayson, like the car in *Schoenknecht*, was intended for use in answering calls to repair equipment. Finlayson had permission generally to use the truck to perform repairs on equipment and on the day of the accident had been directed by his employer to go to a company shop and do some additional work. Since the use of the truck to facilitate an afternoon at the "Animal House" clearly deviated from its intended use, it would not be considered "regular use."

## FREQUENCY OF USAGE

Metropolitan, on the other hand, argues that "regular use" means frequent or continuous use and emphasizes the actual control Finlayson had over the vehicle in support of its position. Other courts have adopted this view, defining "regular use" as "customary use as opposed to occasional use or special use" or "continuous use; uninterrupted normal use for all purposes; without limitation as to use." *Farmers Ins. Co. v. Zumstein*, 138 Ariz. 469, 675 P.2d 729, 732 (Ct.App.1983). *Zumstein* also concerned an employee's use of a pickup truck owned by his employer, which truck became involved in an accident. The court in *Zumstein* noted that the employee drove the truck to work daily, had the only set of keys to the truck, and kept the truck at his residence. The court found his use "regular" for purposes of the exclusion in his insurance policy. *Id.*, 675 P.2d at 732. So far as the *Zumstein* court was concerned, the fact that his use of the truck at the time of the accident was in violation of restrictions his employer had placed on its use did not detract from the employee's expected and actual use of the truck on a daily basis. *Id.* 675 P.2d at 733.

Similarly, the Washington Supreme Court in *Grange Ins. Ass'n. v. MacKenzie*, 103 Wash.2d 708, 694 P.2d 1087 (1985), concluded that "it is the fact of regular use and not the purpose of that use that is the relevant issue." *Id.* 694 P.2d at 1089. *See also Westhaver v. Hawaiian Ins. & Guar. Co.*, 15 Wash. App. 406, 549 P.2d 507 (1976). The court in *MacKenzie* reasoned, no doubt correctly, that the purpose of an exclusionary clause within an automobile liability policy is to prevent an increase in the amount of risk without a corresponding increase in the premium. The risk to the insurance company is related only to the amount of time the car is driven, not to the

*reason* that the car is driven. 694 P.2d at 1089.

Applying this alternative definition of the term "regular use" to the facts of this case, Finlayson would not be covered because, like the employee in *Zumstein*, he used his employer's truck daily, kept it at his residence, and kept the keys to the truck within his possession. The fact that his use of the truck in driving to the "Animal House" bar was anomalous and without his employer's permission is irrelevant under the analysis set forth in *Zumstein* and *MacKenzie.*

## AMBIGUITY

In light of the contradictory case law, appellant argues that, at the least, "regular use" is an ambiguous term which Metropolitan could readily have defined in the policy. The ambiguity resulting from failure to do so should trigger the doctrine that ambiguous language in a contract will be strictly construed against the party who drafted the provision. *See, e.g., Sears v. Riemersma,* 655 P.2d 1105, 1107 (Utah 1982) ("The well-established rule in Utah is that any uncertainty with respect to construction of a contract should be resolved against the party who had drawn the agreement."). *Accord, Parks Enters. Inc. v. New Century Realty, Inc.,* 652 P.2d 918, 920 (Utah 1982); *In re Estate of Orris,* 622 P.2d 337, 339 (Utah 1980). *But see Wilburn v. Interstate Electric,* 748 P.2d 582, 586 (Utah Ct.App.1988) (doctrine is applied as a kind of tie breaker, used only after the receipt and consideration of all pertinent evidence still leaves unresolved the question of what the parties intended).

 This doctrine is particularly applicable to the interpretation of insurance contracts and, when applied, requires liberal construction in favor of the insured.[3] *See, e.g., Fuller v. Director of Finance,* 694 P.2d 1045 (Utah 1985); *Utah Farm Bureau v. Orville Andrews & Sons,* 665 P.2d 1308, 1309 (Utah 1983). Consequently, we must determine whether the exclusionary language in the Metropolitan policy, specifically the term "regular use," is ambiguous and therefore subject to construction in favor of the insured.

Language is considered ambiguous if "the words used to express the meaning and intention of the parties are insufficient in a sense that the contract may be understood to reach two or more plausible meanings." *Central Sec. Mut. Ins. Co. v. DePinto,* 681 P.2d at 17. The term "regular," in common parlance, means "undeviating in conformance to a standard ... conformity to a prescribed rule, standard, or established pattern." *Webster's Third New International Dictionary* 1913 (1986). This definition is consistent with appellant's position. However, as previously discussed, "regular" could "also refer to the 'frequency' of the use of the automobile." *Central Sec. Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 681 P.2d at 17. This definition is consistent with Metropolitan's position.

Somewhat surprisingly in view of the inconsistent interpretations courts have given the term, some courts have found that the term "regular use," even when undefined, is not ambiguous. *See, e.g., Central Sec. Mut. Ins. Co. v. DePinto,* 681 P.2d at 18 (phrase "regular use" contained in automobile liability policy was not ambiguous); *Farmers Ins. Co. v. Zumstein,* 138 Ariz. 469, 675 P.2d 729, 734 (Ct.App. 1983) (term "regular use" was unambiguous, as a matter of law). Other courts construing similar exclusionary provisions have found them to be "ambiguous in a very real sense."[4] *Dairyland Ins. Co. v.*

---

3. Ordinarily, it is appropriate to simply construe ambiguities against insurers, without pausing to consider extrinsic evidence as to intent, since the parties to routine kinds of insurance contracts typically do not discuss or negotiate terms and provisions. *See Wilburn v. Interstate Electric,* 748 P.2d 582, 585 n. 2 (Utah Ct.App.1988).

4. At least one case ultimately finding no ambiguity has conceded that "the phrase 'regular use'

may seem to have several possible meanings" but went on to find the phrase unambiguous. *Central Sec. Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 681 P.2d 15, 17–18 (1984). And "[v]irtually all courts have found it necessary to engage in a detailed grammatical interpretation to find [similar clauses] ambiguous or unambiguous." *Dairyland Ins. Co. v. Ward,* 83 Wash.2d 353, 517 P.2d 966, 969 (1984).

*Ward,* 83 Wash.2d 353, 517 P.2d 966, 969 (1984).

As previously stated, if the words used to express the meaning and intention of the parties may be understood to reach two or more plausible meanings, the language is ambiguous. We find either construction presented by the parties plausible. Each interpretation has some support in the case law and in ordinary usage. From all that has been said, we find inescapable the conclusion that the phrase "regular use," as used in the Metropolitan policy, is ambiguous. The phrase must therefore be construed in favor of coverage for Neal Finlayson and, therefore, recovery for appellant Childs.

Accordingly, the judgment is reversed and the case remanded with instructions to enter judgment in favor of Childs.

BENCH and BILLINGS, JJ., concur.