785 P.2d 722

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Plaintiff–Appellant,**

v.

**Jacent MORENO, Cable Repair Service
of Hobbs, Inc., and Zurich Insurance
Company, Defendants–Appellees.**

No. 18200.

Supreme Court of New Mexico.

Nov. 29, 1989.

Atwood, Malone, Mann & Turner, P.A., William P. Lynch. Roswell, for plaintiff-appellant.

R.E. Richards, P.A., Samuel M. Laughlin, Jr., Hobbs, for defendants-appellees.

## OPINION

SOSA, Chief Justice.

State Farm Mutual Automobile Insurance Co. brought an action for declaratory judgment against its insured Jacent Moreno, his employer, Cable Repair Service of Hobbs, Inc. (Cable Repair), and Cable Repair's liability insurance carrier, Zurich Insurance Co., asserting nonliability with regard to claims arising out of an accident involving an automobile driven but not owned by the insured. On the night of the accident, September 6, 1986, Moreno was driving from Lubbock to Levelland, Texas, in a Mercury Marquis owned by his employer. The State Farm policy in effect on Moreno's personal car provided coverage for nonowned automobiles, defined in the policy as an automobile not available or furnished for the regular or frequent use of the insured. After a bench trial, the district court concluded the State Farm policy provided coverage under the nonowned car clause. Based upon the following discussion, we reverse.

The pertinent facts are undisputed. Moreno was employed in Hobbs by Cable Repair, an oil field service company, and was responsible for client contact and development with respect to sales. He was required to be on call 24–hours a day, seven days per week with alternating weekends off. The company car assigned to Moreno in November 1985 was equipped with a mobile telephone in order for the main office to contact Moreno while he was on the road. Moreno took the car home every night and drove it every week day and many weekends as part of his job duties which included making weekly sales calls in the Levelland, Texas area. During his stays in Levelland, and also while at home in Hobbs, Moreno drove the company car to obtain meals and for other personal use. Moreno's supervisor, Marty Chambless, testified he had no objections to this practice "just as long as * * * he didn't abuse a privilege."

The weekend of September 6 was to be Moreno's weekend off. He planned to drive his personal car to Levelland on Friday, stay at his girlfriend's, and, on Saturday, drive to Lubbock for personal shopping. Moreno testified his usual·practice, if he was in Levelland on a Friday prior to an "off" weekend, was to either drive the company car to Hobbs and return to Levelland in his personal car, or have his girlfriend follow him in her car to spend the weekend in Hobbs. However, with regard to this particular "off" weekend, the district court found the supervisor told Moreno on Thursday or Friday to take the company car to Levelland because he wanted some equipment delivered that was too large to fit into Moreno's personal car. The court also found Moreno's use of the company car when the accident occurred was within the scope of consent of his employer.

State Farm contends the district court erred in ruling, as a matter of law, that coverage was provided under the nonowned car clause. We agree with State Farm's claim that the basis upon which this conclusion rests, i.e., the finding that on the night of the accident the company car was not furnished or available for Moreno's regular or frequent use, is unsupported by the evidence. A judgment cannot be sustained on appeal unless the conclusion upon which it is based finds support in the findings of fact. *Watson Land Co. v. Lucero*, 85 N.M. 776, 517 P.2d 1302 (1974).

In question is the application of the following policy provision:

*Non–Owned Car*—means a *car* not:

1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:

*you, your spouse*, or any *relatives*. The use has to be within the scope of consent of the owner or *person* in lawful possession of it.

(Emphasis in original.)

The nonowned car clause extends coverage beyond the automobile scheduled in the policy with the purpose "to protect an insurer against a situation where an insured purchases a policy covering one car and could then be covered as to all automobiles he frequently uses." *State Farm Fire &*

*Casualty Co. v. Price,* 101 N.M. 438, 684 P.2d 524 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984); *see also Keplinger v. Mid–Century Ins. Co.,* 115 Ariz. 387, 565 P.2d 893 (Ct.App.1977) (purpose to cover occasional or incidental use of other vehicles without payment of additional premium but, concomitantly, to exclude habitual use of other vehicles which would increase insurer's risk without corresponding increase in premium).

The issue presented requires analysis and application of the terms "regular and frequent use" as found in the nonowned automobile provision. Our application of the terms as used within the purview of the exclusionary clause for nonowned automobiles is controlled by the particular facts of each case and is susceptible to no hard and fast rule. *See Farmers Ins. Co. of Ariz. v. Zumstein,* 138 Ariz. 469, 675 P.2d 729 (Ct.App.1983); *Central Sec. Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 681 P.2d 15 (1984); *Kunze v. State Farm Mut. Auto. Ins. Co.,* 197 N.W.2d 685 (N.D.1972). Furthermore, our analysis need not focus upon the terms "furnished" or "available" because the facts clearly illustrate that Moreno had permissive and exclusive use of the company car. *See Price,* 101 N.M. at 442, 684 P.2d at 528 (test under "furnished or available" clause is availability of automobile for regular use, not frequency of use); *see also Waggoner v. Wilson,* 31 Colo.App. 518, 507 P.2d 482 (1972) ("available" construed to require potential use of vehicle to be to a substantial degree under control of insured, and vehicle should not be considered "available" where keys and specific permission must be obtained each time use is desired).

Neither party alleges ambiguity in the language of the exclusionary clause; therefore, because New Mexico law has not defined the terms "regular use" or "frequent use" as used in the nonowned automobile provision, they are to be construed in their usual or ordinary sense. *See Western Commerce Bank v. Reliance Ins. Co.,* 105 N.M. 346, 732 P.2d 873 (1987) (unambiguous insurance contracts must be construed in their usual and ordinary sense unless language in policy requires something different).

The term "regular use" suggests a principal use as distinguished from a casual or incidental use, *State Farm Mut. Auto. Ins. Co. v. Bates,* 107 Ga.App. 449, 130 S.E.2d 514 (1963), and further denotes customary use as opposed to occasional or special use. *Zumstein,* 138 Ariz. at 472, 675 P.2d at 732; *cf. Universal Underwriters Ins. Co. v. Farmers Ins. Co. of Idaho,* 108 Idaho 249, 697 P.2d 1263 (Ct.App.1985) (insured made special arrangements to use nonowned vehicle). "Frequent use" means an often repeated but irregular, casual, or incidental use. *Keplinger,* 115 Ariz. at 390, 565 P.2d at 896.

In resolving the factual question, the district court relied upon *Kunze* which considered the time and place of the accident giving rise to the claim and the purpose for which the automobile was supplied. *See also Hartford Ins. Group v. Winkler,* 89 Nev. 131, 508 P.2d 8 (1973) (critical time period is time at which accident occurred). Another point of consideration in making this determination is the presence or absence of an expressed or implied understanding with the owner regarding the use of the vehicle. *See Brooks v. Link,* 212 Kan. 690, 512 P.2d 374 (1973).

While not necessarily endorsing the analysis adopted by *Kunze,* we quote as instructive the following language from the case on which it relied, *Pacific Automobile Insurance Co. v. Lewis,* 56 Cal. App.2d 597, 132 P.2d 846 (1943):

[An automobile] furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes. It may be assumed that when a car is furnished all of the time for business purposes, with permission to use the same for incidental personal purposes, all within a certain area, the car might be said to be furnished for regular use within that

area. But when a car thus furnished for such a use is driven to a distant point on one occasion, with the special permission of the one furnishing the car, that particular use would hardly seem to be a "regular use" of the car. It cannot be said, as a matter of law, that such a use on a particular occasion, which is a departure from the customary use for which the car is furnished, is a regular use within the meaning of these clauses of the policies.

*Id.* at 600–01, 132 P.2d at 848. *But see Grange Ins. Ass'n v. MacKenzie,* 103 Wash.2d 708, 694 P.2d 1087 (1985) (en banc) (court held that exclusive use of automobile necessarily constitutes regular use, regardless of purposes of that use, in determining whether nonowned automobile exclusion applied).

Unlike the result in *Kunze,* however, our review of the record does not find support for the district court's finding that, at the time of the accident, the company car had not been furnished or made available for Moreno's frequent or regular use. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 428 P.2d 625 (1967).

Although conflicting testimony was presented on the question of whether Chambless had knowledge of Moreno's personal plans to go to Lubbock on September 6, we find persuasive Moreno's testimony that Chambless told him "to go ahead and take the Marquis; and I told him that I was going to go do some shopping in Lubbock ... He told me to go ahead and take the Marquis but be careful." Further Moreno stated that, as usual, he had planned to make a business contact in Lubbock on Saturday regardless of whether he had taken his personal car or the company car that weekend. On cross-examination Moreno testified that prior to September 6 there were a few occasions of which Chambless and Cable Repair's president, Mr. White, were aware that Moreno would use the company car to drive from Levelland to Lubbock with the purpose of shopping or

having dinner without calling on business clients.

Chambless' testimony revealed that he assumed Moreno would take the company car on this particular weekend, but could not recall discussing which car Moreno should take. He stated that on "Thursday I told him he needed to take this equipment up to Levelland * * * and as far as I know he never took his personal vehicle on company business because he wouldn't have a mobile phone in his personal vehicle plus our insurance—insurance-wise, you know, it's not covered." Chambless also testified that Moreno "used his own discretion on it just as long as we didn't get into the aspect of him using it * * * in excess for his own personal benefit." However, Chambless stated he knew Moreno was going to take care of personal matters in Levelland since that was his weekend off.

Nevertheless, the fact that the insured's use was contrary to any alleged restrictions placed on the use of the company car by the employer does not detract from the insured's expected and actual use of the vehicle on a regular basis so as to exclude coverage under the nonowned vehicle provision of the policy. *See Zumstein,* 138 Ariz. at 473, 675 P.2d at 733. In *Zumstein,* the insured employee had sole possession of the keys to a truck which he kept at his residence and drove to work. That court found where an insured had use of or the opportunity to use a vehicle on more than an infrequent or casual basis, or where the use or potential use is recurring, the effect of the nonowned vehicle clause is to exclude coverage. *Id.* at 473–74, 675 P.2d at 733–34.

Although the weekend of September 6 initially was designated an "off" weekend, as soon as the supervisor requested Moreno to use the company car to haul equipment to Levelland, the characterization of the weekend changed. It would have been unreasonable on the part of the employer, knowing that Moreno had personal plans for the weekend, to expect him not to make use of the company car while remaining in Levelland before returning to "on-duty" status in Hobbs on Monday morning. Taking into account the purpose behind Moreno's regular use of the car, it also would be

unreasonable to describe Moreno's use of the company car on the night of the accident as merely casual, incidental, or irregular. This is unlike the situation described in *Pacific* where the car was driven to a distant point on one occasion with special permission. Moreover, Moreno's use of the company car on this particular evening was not a departure from his customary use for which the car was furnished. The geographic use in this instance was not unique, but well within established patterns of use. The mixed use of business and personal was typical of Moreno's use during "on duty" and, on several occasions, "off" duty weekends.

Accordingly, under the facts of this case, we reverse the judgment of the district court and remand for the entry of judgment in favor of State Farm.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.