STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. THOMAS L. BUNDY *et al.*, Defendants (Union Oil Company of California *et al.*, Defendants-Appellants).

Fourth District   No. 4—87—0371

Opinion filed February 3, 1988.

Richard E. Stites, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellants.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson and John A. Kendrick, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On October 21, 1985, plaintiff State Farm Mutual Automobile Insurance Company (State Farm) filed this action for declaratory judgment in the circuit court of McLean County. It sought an interpretation of the coverage provided by a policy of automobile insurance issued to defendant Thomas L. Bundy. On April 8, 1987, the court granted plaintiff's motion for summary judgment as to count I of the complaint. The court found (1) a pickup truck, owned by defendant Puregro Company, d/b/a Marco Farm Supply (Puregro), which was being driven by defendant Bundy at the time of an automobile collision, was excluded from coverage under the policy because of a limitation in the policy for nonowned cars provided for the insured's "regular or frequent use," and (2) plaintiff had no duty to defend or to indemnify Bundy for any loss resulting from the incident. The court found no just reason to delay enforcement or appeal. 107 Ill. 2d R. 304(a).

Defendants Union Oil Company (Union), Puregro, and Continental Insurance Company (Continental) appeal contending that although no dispute existed as to the underlying circumstances in regard to defendant Bundy's use of the vehicle he was operating at the time of the collision, a question of fact exists as to whether those circumstances meet the requirements of the nonowned car provision of the policy. Those defendants request that we overrule this court's previous decision in *Economy Fire & Casualty Co. v. Gorman* (1980), 84 Ill. App. 3d 1127, 406 N.E.2d 169, where we held a similar exclusionary provision of an automobile liability policy applied as a matter of law under substantially the same circumstances. However, we adhere

to that precedent and affirm.

The liability coverage of the car policy is defined within "SECTION I—LIABILITY—COVERAGE A," which provides, in part:

> *"Coverage for the Use of Other Cars*
>
> The liability coverage extends to the use, by an *insured,* of a *newly acquired car,* a *temporary substitute car* or a *non-owned car."* (Emphasis in original.)

Within the "DEFINED WORDS" section of the car policy, the agreement provides:

> *"Non-Owned Car*—means a *car* not
>
> 1. owned by,
> 2. registered in the name of, or
> 3. furnished or available for the regular or frequent use of: *you, your spouse,* or any *relatives."* (Emphasis in original.)

Bundy stated in a discovery deposition, included in plaintiff's motion for summary judgment, that (1) on Saturday, April 14, 1984, he was involved in a collision on United States Route 51 while driving a pickup truck owned by Puregro; (2) he had obtained the truck from the personal residence of Thomas Anderson, a coworker at Puregro, for the purpose of transporting a refrigerator from a store in Bloomington to the home of his son-in-law in Clinton; (3) prior to the collision, he had used the truck in the course of his employment with Puregro on a daily basis; (4) he also used the truck for personal reasons two or three times per month (however, he later said he had only used it on approximately 30 occasions during the eight years he worked for Puregro); (5) he knew that personal use of vehicles was to be approved by the managers, and he had always, previous to this incident, asked permission from a manager for use of the truck; (6) on the day of the accident, he had tried to obtain permission to use the vehicle from a supervisor, but he was unable to reach anyone; (7) he had initially made a statement indicating that he was on company business at the time of the accident, but he later corrected himself and told the truth; and (8) Anderson had told him to say he was on company business in order to keep both Anderson and Bundy out of trouble.

Brian Huss, a manager at Puregro, said in his deposition (1) Bundy would have previously used the truck for personal reasons only within a 10-mile radius of Clinton, Illinois; (2) he had established an informal policy of allowing individual employees to use the company pickup trucks for personal reasons; (3) although a formal written log procedure had been established for use of the truck for personal reasons, it was never used; (4) he used the truck on a daily basis for

transportation between his residence and his workplace; and (5) he also used the truck once or twice per week for personal business unrelated to transportation.

Thomas Anderson stated in his deposition that all of the employees had used the trucks for personal reasons, but indiscriminate use of the truck was not permitted, and it was not to be used for other than local use.

The foregoing testimony was not disputed. Because the facts shown were substantially the same as those in *Gorman*, the trial court concluded that under the precedent set forth in that case, the undisputed evidence established as a matter of law that the vehicle driven by Bundy at the time of the collision was "furnished or available for [his] regular or frequent use" thus triggering the operation of the exclusionary provisions of the policy issued by plaintiff to Bundy.

The trial court found, on the basis of *Gorman*, that plaintiff was entitled to a judgment as a matter of law on the question of whether its automobile insurance policy issued to Bundy excluded coverage because it was "furnished or available for the regular or frequent use of" Thomas Bundy.

In *Gorman*, the insured's son, Gorman, Jr., was involved in a one-car collision while driving his employer's vehicle. His employer provided the automobile for him to use in making deliveries, and the vehicle was never furnished to him for his personal use. On the evening of the accident, Gorman, Jr., drove the vehicle to a friend's home after working hours, and later that night, became involved in a collision. This court pointed out that, although courts have had no difficulty finding "regular use" where an automobile is available for someone's use at any time at his complete discretion, the vehicle need not be available to the driver for his unrestricted use at any time in order to be considered a vehicle furnished for his "regular use."

This court reasoned that the employer had furnished the car to Gorman, Jr., on a regular basis, because, irrespective of his actual use of the car at the time of the accident, the car was:

"[F]urnished to Gorman, Jr., for his expected use throughout each business day ***. Obviously, his use was not 'incidental' and to have deemed his use of this vehicle to have been covered by his parents' liability policy would have greatly increased the exposure on that policy without a compensating premium. We consider his use of the vehicle to have been 'regular' as a matter of law." *Gorman*, 84 Ill. App. 3d at 1131, 406 N.E.2d at 173.

In *Gorman*, this court cited and rejected the reasoning of the Sec-

ond District in *Schoenknecht v. Prairie State Farmers Insurance Association* (1960), 27 Ill. App. 2d 83, 169 N.E.2d 148. There, plaintiff's employer provided him with a car to use in his work, and he was required to return the car at the end of each day. On the day in question, instead of returning the car, he drove it to visit friends and was involved in a collision that evening. The trial court found that an insurance policy issued by defendant on plaintiff's personal automobile provided coverage for this collision. On appeal, the defendant insurance company contended that coverage was not provided, because the automobile involved in the collision had been furnished to plaintiff by his employer for his "regular use." The court on appeal rejected that contention stating that plaintiff was furnished the car for his use only in connection with his employer's business during working hours. The use of the car to visit friends after hours was deemed to be an isolated, casual and unauthorized use of the vehicle, and thus failed as a matter of law to come within the "regular use" exclusion.

This court, in *Gorman*, considered *Schoenknecht* to have been overruled, *sub silentio*, by *State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 69 Ill. 2d 103, 370 N.E.2d 543.

In *Differding*, a professor at Northern Illinois University in De Kalb permitted the insured, Differding, to use his automobile during the summer break to prevent deterioration to the vehicle. The only limits placed on the use of the car were that defendant use it only during the summer and that the use be restricted to the area of the university. After the end of the summer school term, defendant was involved in a collision while driving the professor's car to her home in a Chicago suburb.

The plaintiff insurance company filed an action for declaratory judgment to determine whether defendant Differding's operation of the vehicle came within the "regular use" exclusion found in the automobile insurance policies issued by plaintiff to defendant's father and brother. The trial court ruled in favor of the plaintiff insurance company, finding that the automobile involved in the collision was furnished or available for the frequent and regular use of the defendant. The appellate court, relying in part on *Schoenknecht*, reversed stating that an automobile furnished for a limited period of time and strictly for local use could hardly be said to have been furnished for "regular use" when it was being used for long distance travel. The supreme court indicated that the question of whether the automobile was furnished or available to the defendant for her frequent or regular use was one of fact. (*Differding*, 69 Ill. 2d at 107, 370 N.E.2d at 545.) The court found there was sufficient evidence in the record to support the

findings made by the circuit court, and, in holding that the findings were contrary to the manifest weight of the evidence, the appellate court erred.

As noted in *Gorman*, the opinion in *Differding* did not discuss the question of whether defendant's deviation from the scope of permission given by the professor bore upon or prevented defendant's operation of the vehicle from being "regular use." Rather, the opinion keyed on the manner in which the automobile was "furnished or available" and not on the manner in which it was being used at the time of the collision.

This court in *Gorman* interpreted *Differding* as holding that the question of whether a vehicle's use is furnished to another on a "regular" basis is determined irrespective of whether it is actually being used at the time of an occurrence in a manner contrary to the conditions upon which it was furnished. This court's interpretation was supported by an authority on insurance stating that the purpose of the exclusion was to provide coverage for occasional or incidental use of other cars without payment of an additional premium, but to exclude the habitual use of other cars which would increase the risk on the insurer without a corresponding increase in the premium. 12A R. Anderson, Cyclopedia of Insurance Law §45:1052 (rev. ed. 1981).

Defendants point out that here and in *Differding*, the evidence showed that the drivers, for whom policy coverage was sought, had authority to use another vehicle frequently but were involved in a collision during an unauthorized use of that vehicle. In *Differding*, the supreme court held that evidence to create a factual question as to coverage while the circuit court here held that coverage was precluded as a matter of law. Defendants contend that we should overrule *Gorman*, where we held coverage to be excluded as a matter of law, and hold that, as in *Differding*, the evidence here created a factual question. However, in *Differding*, the permissible use of the other vehicle was only for the period of a single summer and in a very restricted area. In *Gorman* and here, the use of the other vehicle was for a much more extended period of time than a single summer, and the use of the vehicle for business purposes was completely unrestricted. Moreover, the evidence here showed that Bundy had frequently used the vehicle, with permission, for personal reasons within an area larger than one city.

Because the evidence here showed a larger and geographically more expanded use by the insured of the other vehicle than was the situation in *Differding*, we conclude that the other vehicle here was shown, as a matter of law, to not be a "Non-Owned Car" within the

meaning of the instant policy. Accordingly, the trial court properly granted summary judgment. Because the evidence in *Gorman* was similar to that here, we decline to overrule our decision there.

The summary judgment entered by the circuit court is affirmed.

Affirmed.

McCULLOUGH and LUND, JJ., concur.