[No. 25509–6–I.   Division One.   May 13, 1991.]

WILLIAM CRIPPEN, ET AL, *Appellants,* v. THE CITY
OF BELLEVUE, ET AL, *Respondents.*

*Mary L. Gaudio* and *Daniel Modeen,* for appellants.

*Richard L. Andrews, City Attorney,* and *David E. Kahn, Assistant,* for respondents.

COLEMAN, J.—William and Evelyn Crippen appeal the trial court's order granting summary judgment to the City of Bellevue, D.L. Sterling, Ronald Pedee, and Donald Hamilton, arguing that the trial court erred in holding that (1) the municipal fire chief had discretion to refuse to declare a vacancy for a battalion chief position and (2) there were no issues of material fact regarding the fire chief's motivation for refusing to declare a vacancy. We affirm.

William Crippen has been a fire fighter with the Bellevue Fire Department since 1967. He became a lieutenant in 1969. Over the years, Crippen was given numerous performance evaluations. The evaluations reflect that Crippen's strongest points were his experience and knowledge of the fire service. His weakest point was "negative approach to department procedures that he does not agree with."

On March 27, 1984, Crippen and several others took the civil service examination for the position of battalion chief. It involved a written homework assignment, an oral test, and a written test that was timed. The examination did not include a situation in which the candidate supervised other fire fighters. Crippen was the only candidate whose name was placed on the battalion chief eligibility list approved by the Civil Service Commission on April 24, 1984.

In August 1984, Battalion Chief Michael Moe decided to resign his position. Sometime between August 5, 1984, and August 12, 1984, the formal date of his resignation, Moe attended a monthly meeting of chief officers. After the meeting, Moe discussed his upcoming resignation with Chief Sterling, Battalion Chief Pedee, and Deputy Chief Hamilton. Moe indicated that Crippen was the only candidate eligible for his position. Moe claims that Sterling told him that there was "no way" that he would promote Crippen to Moe's position.

On August 26, 1984, Chief Sterling received a petition signed by 18 fire fighters opposing the possible appointment of Crippen to the position of battalion chief. The petition expressed the authors'

> belief that Captain Crippen would not serve the best interest of the Department in such a position. We are confident that such a move would be detrimental to the purposes and methods of the administrative goals for supervision of a platoon of men under emergency and non-emergency situations.

The letter then listed examples in support of the authors' position. Crippen was alleged to have caused a vehicle to speed through an intersection during an emergency response by placing his foot on the foot of the driver of the vehicle. Crippen also was accused of questioning the intelligence and policies of his superiors in the presence of fire crews, humiliating crew members publicly, and violating department policies and procedures.

In response to the petition from the 18 fire fighters, Chief Sterling asked Battalion Chief Pedee to conduct an investigation of Crippen. Pedee understood that the purpose of the investigation was to determine if Crippen continued to act as the men who signed the petition had described. On November 13, 1984, Pedee submitted a letter to Chief Sterling detailing the results of his investigation.

In addition to the incidents described in the petition from the 18 fire fighters, Pedee reported several instances of misconduct by Crippen. For example, On August 28 or 30, 1984, Crippen asked Deputy Chief Hamilton if he could be excused to attend a class on "interpersonal skills development" on September 5 and 6. What Crippen in fact attended was a seminar related to his personal business.[1] On November 16, 1984, Pedee wrote a letter to Chief Sterling advising Sterling that

> [t]o promote Captain Crippen to a higher level of responsibility would be detrimental to the department and would show a lack of concern that rules be observed and that members be held

---

[1] Crippen was an Amway distributor.

accountable for their conduct and their treatment of others, especially subordinates.

Furthermore, Pedee wrote that the law department had advised that the appointment of Crippen to battalion chief could be avoided by not requesting a name from the Civil Service Commission list.

Crippen was confronted by Chief Sterling, Pedee, and Hamilton with the allegations against him. He was given an opportunity to respond to the charges, which he did, but he nevertheless was informed that he would not be promoted. Later Crippen was given a written warning for unacceptable performance.

On February 22, 1985, James Webster, a lawyer representing the International Association of Fire Fighters Local 1604, wrote the Bellevue Civil Service Commission to protest "the action of the City in reassigning Deputy Fire Chief Don Hamilton on August 12, 1984, to the position of Battalion Chief formerly held by Mike Moe."[2] Webster claimed that the union was concerned because the action appeared to be a "non–bona fide reorganization" intended to avoid the use of the current Civil Service eligibility list. The union asked the Civil Service Commission to conduct an investigation.

On June 17, 1985, Bellevue Civil Service Commissioner John Pringle conducted an investigation of Crippen's situation. On June 26, 1985, the Commission entered findings, conclusions, and a decision. The Commission found that Chief Sterling decided not to fill the battalion chief vacancy based upon the knowledge that Crippen was the only person on the eligibility list. Had the Fire Department requested a list of the names of the persons eligible for the position, it would have been required to appoint Crippen to the position. The Commission held, however, that the Chief had the discretion not to fill the vacancy rather than fill it with Crippen, who Sterling believed was not qualified to

---

[2]Chief Hamilton temporarily performed the battalion chief duties. The position later was filled permanently by Gary Teague.

perform the job. Crippen did not appeal the Commission's decision.

On March 15, 1985, Crippen filed a complaint against the City of Bellevue, Chief Sterling, Ronald Pedee, and Donald Hamilton.[3] Crippen claimed that the defendants (1) criminally violated the civil service rules by failing to promote him for reasons other than merit, efficiency, or fitness, (2) defamed and harassed him in violation of his civil rights, and (3) violated his rights of equal protection and due process of law. Crippen prayed for (1) money damages of $1,100,000, (2) an injunction to prevent the defendants from "flouting" the civil service rules in the future, (3) certification of the action as a class action, (4) a writ of mandamus ordering his promotion to the position of battalion chief, and (5) attorney fees. Crippen later agreed to drop his claims for defamation, harassment, and criminal activity and withdrew his request that his cause be certified as a class action.

On September 15, 1989, the defendants filed a motion for summary judgment. On October 2, 1989, Crippen filed a cross motion for summary judgment. The motions were heard on October 6, 1989. The trial court found that RCW 41.08.100 gave Chief Sterling the authority to not fill a vacancy and granted the defendants' motion for summary judgment. An order granting the defendants' motion was entered on January 8, 1990. This appeal followed.

██ The sole issue on appeal is whether the trial court erred when it granted the defendants' motion for summary judgment.

A motion for summary judgment shall be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

---

[3]Crippen filed his complaint before the Civil Service Commission investigated and entered its decision in the matter.

CR 56(c). "'A material fact is one upon which the outcome of the litigation depends[.]" *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 915, 757 P.2d 507 (1988) (quoting *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642, 618 P.2d 96 (1980)). The party moving for summary judgment has the burden of showing that there is no issue of material fact. *Hash,* at 915. All reasonable inferences must be resolved against the moving party. *Hash,* at 915. If the moving party meets its burden of producing factual evidence showing that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to set forth facts which show that there is a genuine issue of material fact. *Hash,* at 915.

■ When an appellate court reviews a summary judgment, it must review the materials that were submitted for and against the motion in the light most favorable to the nonmoving party. *Hash,* at 915. This court, therefore, must review the record before the trial court in the light most favorable to Crippen. *See Hash,* at 916.

Civil service laws are intended to establish an orderly system of personnel administration based upon merit principles of appointment and promotion. *See* RCW 41.06.010, which sets forth the purposes of the civil service statutes; *see also* RCW 41.08.050; *Bellingham Firefighters Local 106 v. Bellingham,* 15 Wn. App. 662, 665–66, 551 P.2d 142 (1976). RCW 41.08 sets forth the civil service laws for city fire fighters. The provisions of RCW 41.08 do not apply to cities that have provided "for civil service in the fire department by local charter or other regulations which said local charter or regulations substantially accomplish the purpose of this chapter." RCW 41.08.010.

Bellevue created its own civil service commission in conformity with RCW 41.08.010.

### 3.72.010 Established.

To substantially accomplish the purpose of RCW Chapters 41.08 and 41.12, there is created a civil service commission to be composed of five members appointed by the city manager to exercise the powers and perform the duties established by state law in connection with the selection, appointment, promotion,

demotion and employment of firefighters and police officers, below the rank of division director, of the city.

**3.72.020 Coverage.**

Except as hereinafter specifically provided, and except as may be otherwise provided by the Rules and Regulations of the Civil Service Commission, the provisions of RCW Chapters 41.08 and 41.12 shall control the commission; the selection, appointment, promotion, demotion and employment of all firefighters and police officers, below the rank of division director, or its equivalent by whatever title denominated; and all other aspects of fire and police civil service in the city.

Bellevue City Code 3.72.010, .020. Civil service commissions have the authority to devise and administer competitive tests from which lists of qualified persons for various positions can be drawn. RCW 41.08.040(8). When a position in the fire service becomes vacant, RCW 41.08.100 provides in pertinent part as follows:

Whenever a position in the classified service becomes vacant, the appointing power, *if it desires to fill the vacancy,* shall make requisition upon the commission for the name and address of a person eligible for appointment thereto. The commission shall certify the name of the person highest on the eligible list for the class to which the vacant position has been allocated, who is willing to accept employment.

(Italics ours.) Additionally, the Bellevue Civil Service Rules provide as follows:

*RULE VII. APPOINTMENT*

*Section 6. Certification of Eligibles.* Upon receipt of a request to fill a vacancy from an eligible list, the Secretary–Chief Examiner shall certify to the appointing authority the names of the persons within the top twenty–five percent on such eligibility list or the three persons highest on such list, whichever produces the largest number of persons for each vacancy, if there are such persons available. The appointing authority shall forthwith appoint one of the certified persons to such vacant position.

■■ Courts should attempt to give effect to the plain meaning of words used by the Legislature. *State v. Sommerville,* 111 Wn.2d 524, 531, 760 P.2d 932 (1988). Each provision of a statute, however, is construed in relation to the others with the objective of consistent construction of the whole. *Sommerville,* at 531. Respondents argue that the plain language in RCW 41.08.100, "if it desires to fill the

vacancy," gives the appointing authority complete discretion to decide not to requisition a list of eligible candidates from the Civil Service Commission. Crippen argues that such a reading of the statute defeats the purpose of the statute as a whole, which was intended to establish a system of appointment and promotion based upon merit.

No cases were found that are directly on point with this one. The Supreme Court has held, however, that the civil service laws were not intended to remove all discretion from the decision–making process. In *International Ass'n of Fire Fighters, Local 404 v. Walla Walla,* 90 Wn.2d 828, 586 P.2d 479 (1978), the fire fighters' union challenged Walla Walla's adoption of the "rule of three" method. The "rule of three" method allows the civil service commission to certify three names to the appointing authority, rather than certifying only the person highest on the eligible list as described in RCW 41.08.040(9).[4] The union argued that Walla Walla's method was not in accord with RCW 41.08-.040(9).

The trial court voided the portion of Walla Walla's civil service system that allowed use of the "rule of three" method. The Supreme Court reversed the decision, finding that in spite of the language in RCW 41.08.040(9), under which use of the "rule of one" method is specified, Walla Walla's "rule of three" method substantially accomplished the purpose of the state civil service law for fire fighters.[5] *Walla Walla,* at 832. The court disagreed with the union that the Legislature intended to remove all discretion from the decision–making process. *Walla Walla,* at 831.

As respondents concede, if Chief Sterling desired to fill the battalion chief position, he would have been

---

[4]The Bellevue City Code also has adopted the "rule of three" method. *See* Bellevue City Code 3.72.030.

[5]This court reached a similar result regarding the City of Bellingham's use of the "rule of three" method, in contrast to the "rule of one" method in RCW 41.08.100, in *Bellingham Firefighters Local 106 v. Bellingham,* 15 Wn. App. 662, 665–66, 551 P.2d 142 (1976).

required to requisition the Commission for the names of persons eligible for appointment to that position. *See* RCW 41.08.100. The statute, however, does not require the appointing authority to requisition the list anytime there is a vacancy. Hence, although the civil service laws limit fire chiefs' discretion to appoint subordinates, the laws do not completely eliminate the chiefs' discretion. As the Bellevue Civil Service Commission held, Chief Sterling had the discretion not to fill the vacant battalion chief position. Although this court is not bound by the Commission's decision, its decision is entitled to deference. We hold, therefore, that Chief Sterling had the discretion to not fill the battalion chief position, left vacant by Chief Moe's resignation, with Captain Crippen.

█ Crippen argues that even if Chief Sterling had the discretion to not appoint him, there are genuine issues of material fact regarding whether or not the Chief exercised his discretion in good faith. As noted above, when the moving party meets its burden of producing factual evidence that shows that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). Unless Sterling's motive for not promoting Crippen would violate public policy, Sterling's motive for failing to do so is not a material issue. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 234, 685 P.2d 1081 (1984) (motive for dismissal would be material if in contravention of clear mandate of public policy).[6]

Respondents set forth reasons for Chief Sterling's decision that were not violative of public policy. They claimed that Chief Sterling exercised his discretion to not appoint Crippen based upon valid management criteria, including

---

[6]Under *Thompson*, which partly involved a public policy exception to the terminable at will rule of employment, the burden is on the employee to show that "his discharge may have been motivated by reasons that contravene a clear mandate of public policy[.]" *Thompson*, at 232. The burden then shifts to the employer to show otherwise. *Thompson*, at 232–33.

Crippen's violations of fire department policies and procedures and behavior that was inappropriate for an officer in the fire service.

When Crippen himself was asked the basis for his claim that he was denied the promotion for reasons other than merit, efficiency, or fitness, he responded as follows:

The lack of the promotion is really what you can identify. I had clearly qualified on those bases so for whatever reason, which would only be conjecture, they failed to follow through on the normal appointment. So I couldn't tell you what their specific motive was.

In his brief, Crippen implies that Chief Sterling's motive for refusing to promote him violated public policy. However, he does not identify any motives that would violate public policy. Even assuming that the Chief did not like Crippen or simply felt that he could not work with him, those reasons for failing to appoint Crippen would not violate public policy.

The Chief had the discretion not to fill the battalion chief vacancy with Crippen. Although Crippen may disagree with the Chief's decision or his reasons for it, Chief Sterling did not exercise his discretion beyond the bounds permitted by law. Consequently, the decision of the trial court is affirmed.

FORREST and BAKER, JJ., concur.