[No. 28485-1-I.   Division One.   April 27, 1992.]

PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, *Appellant,* v. ROBERT C. HOVERTER, ET AL, *Respondents.*

*Ellen E. Barton, Suzanne E. Cohen,* and *deCourcy, Cohen, Barten & Nave, P.S.,* for appellant.

*Joseph L. Koplin* and *Moschetto & Koplin, Inc. P.S.; Richard L. Gemson; Harold C. Fosso* and *Julin, Fosso, Sage, McBride & Mason,* for respondents.

COLEMAN, J. — Progressive Northwestern Insurance Company (PNIC) appeals the trial court's denial of PNIC's motion for summary judgment and the court's grant of sum-

mary judgment to Robert and Michelle Hoverter and their son, Sawyer. PNIC argues that the unambiguous terms of the insurance policy preclude coverage for Sawyer Hoverter's accident. In addition, PNIC contends that Sawyer's use of the car when the accident occurred was not a "special use" that would provide an exception to the exclusionary provision of the policy. We reverse.

In 1990, Robert Hoverter and his wife Michelle (the Hoverters) lived in the same household with their 16-year-old son, Sawyer. The Hoverters contracted with PNIC for insurance coverage for two cars, a 1968 Volvo and a 1964 Mercury Comet. Sawyer was expressly excluded from coverage under that policy.

Robert Hoverter's father, McRoy Hoverter, loaned his Pontiac Phoenix to the Hoverters in March 1990 for their use whenever one of their other cars was not working properly. The Hoverters obtained insurance coverage for the Pontiac by including it on their PNIC policy. While the Pontiac was insured Robert drove it daily to work, and Michelle also used it approximately two or three times each month. When not in use, the car remained in the Hoverters' garage. Although McRoy Hoverter never placed any conditions upon who could drive the Pontiac while the Hoverters kept it, Sawyer was expressly told not to drive the car because he was not covered under the Hoverters' policy.

In May or June 1990, the Hoverters purchased a Ford truck for Sawyer to drive and insured that vehicle with PNIC under a separate policy which bore the policy number 69-25-987-0. Mr. Hoverter was the named insured under that policy and only the Ford truck was listed as an insured vehicle. That policy also contained the following definitions:

2. "YOU["] and "YOUR" mean the Person named as the Insured on the Declaration page and that person's spouse if living in the same household.

. . . .

7. "NON-OWNED CAR" is any CAR which is not owned by, nor leased to, nor registered to, nor furnished for the regular or frequent use of: YOU, a non-resident spouse, or a resident of the household in which YOU reside.

8. "YOUR INSURED CAR" means:

a. Any CAR described on the Declarations page[.]

. . . .

d. A NON-OWNED CAR, while being driven temporarily as a substitute for any vehicle described in this definition, because of its withdrawal from normal use due to mechanical breakdown, repair, servicing, loss or destruction.

In addition, exclusion 18 in that policy expressly stated that PNIC's duty to defend did not apply to

BODILY INJURY or PROPERTY DAMAGE arising out of the ownership, maintenance or use of any vehicle, other than YOUR INSURED CAR, which is owned by or furnished for or available for regular use by: YOU, or a non-resident spouse or a resident of the household in which YOU reside.

The Hoverters deleted coverage for the Pontiac from their PNIC policy in the first part of August 1990 when they purchased a new car and used it instead of the Pontiac. After the Pontiac was deleted from the Hoverters' insurance policy, no one drove it until August 30, 1990. On that date, Sawyer noticed some problem with the steering in his truck and, consequently, he drove the Pontiac to soccer practice. On the way there, Sawyer and two other cars were involved in an accident.

After being notified of the accident, PNIC filed an action for a declaratory judgment that, as a matter of law, the policy insuring Sawyer's use of the Ford truck (policy number 69-25-987-0) provided no coverage for the Pontiac or the August 30, 1990 accident. The Hoverters moved for summary judgment based upon the policy terms and the declarations filed by Robert, Michelle, and Sawyer Hoverter. PNIC filed a cross motion for summary judgment, relying upon PNIC's supportive memorandum, the affidavit of PNIC's senior claims representative, and the transcribed statements of Michelle and Robert Hoverter.

The trial court granted the Hoverters' motion for summary judgment and denied PNIC's motion, concluding that

there was coverage under Progressive Policy No. 69-25-987-0 to Sawyer C. Hoverter and his parents for any and all claims arising out of the automobile accident . . . of August 30, 1990, and that Progressive has a duty to defend, as well as indemnify,

the Hoverters against any claims or lawsuits instituted by the [other] defendants [involved in the accident.]

PNIC appeals.

■ In reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court and reviews the materials submitted for and against the motion in the light most favorable to the nonmoving party. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); *Crippen v. Bellevue*, 61 Wn. App. 251, 257, 810 P.2d 50 (1991). The party moving for summary judgment bears the burden of proving that no issue of material fact exists, and "[a]ll reasonable inferences must be resolved against the moving party." *Crippen*, at 256-57.

■ Further, language in an insurance contract "must be understood in its plain, ordinary, popular sense as it would be understood by the average person purchasing insurance." *Grange Ins. Ass'n v. MacKenzie*, 37 Wn. App. 703, 705, 683 P.2d 221 (1984), *aff'd*, 103 Wn.2d 708, 694 P.2d 1087 (1985). Where no ambiguity exists, a court will not construe a policy. *Grange*, at 704.

The facts here are not disputed. Instead, each party argues that summary judgment should be entered in its favor as a matter of law pursuant to the policy terms. According to those terms, there are three ways in which the Hoverters could have insurance coverage for the accident: (1) if the Pontiac were a "non-owned car" (as defined in section 7 of the policy) used in accordance with section 8(d) of the policy; (2) if the Pontiac had not been "furnished for or available for regular use by" Robert, Michelle, or Sawyer so that exclusion 18 would not apply; or (3) if a "special use" exception to exclusion 18 existed.

We first consider whether the Pontiac was a nonowned car used in accordance with section 8(d). The Hoverters contend that Sawyer's use of the Pontiac on the day of the accident was the type of use contemplated under that section. According to the pertinent portions of section 8(d), "insured car" means the vehicle described on the declaration page (here, the Ford truck) or a "NON-OWNED CAR, while

being driven temporarily . . . for any vehicle described in [the] definition, because of its withdrawal from normal use due to mechanical breakdown, repair, [or] servicing[.]"

In turn, a "nonowned car" is defined as one that is neither owned nor "furnished for the regular or frequent use of [the insured] . . . or a resident of the household in which [the insured] reside[s]." See section 7, quoted, *supra*. It is undisputed that the Hoverters do not own the Pontiac or that Sawyer used the Pontiac because his truck was in need of servicing or repairs. The dispute lies in the meaning of the language "furnished for regular or frequent use".

■ ■ In *Grange Ins. Ass'n v. MacKenzie*, 37 Wn. App. 703, 705, 683 P.2d 221 (1984), *aff'd*, 103 Wn.2d 708, 694 P.2d 1087 (1985), the court was asked to construe essentially the same language in an exclusionary clause of an insurance policy. The relevant language in that case read: "This insuring agreement does not apply . . . [t]o any [other] automobile owned by or *furnished for regular or frequent use* to either the named insured or a member of the same household[.]" (Italics ours.) *Grange*, at 704. The court concluded that the language was not ambiguous but was "as plain and 'popular' as insurance language can be, and there is no need to construe it". *Grange*, at 705. The court also noted that the word "regular" can mean "systematic, even though infrequent". (Italics omitted.) *Grange*, at 705.

Likewise, in the present case, the disputed language in the definition of a nonowned car is unambiguous. The Pontiac was furnished for Robert and Michelle's "regular" use in that they regularly used it whenever one of their other cars was not working. As Michelle Hoverter said in her recorded interview, "[the Pontiac] has always been the replacement vehicle and Sawyer is aware of that fact that we use Grandpa's car when our cars are broken." Such use is systematic. Because the Pontiac was "furnished for the regular or frequent use" of Robert and Michelle, it does not meet the definition of a nonowned car under section 7 of the

policy.[1] Consequently, the Pontiac does not qualify as an insured car under section 8(d) and, thus, PNIC is not liable to the Hoverters under that portion of the policy.

In addition, PNIC argues that exclusion 18 clearly precludes coverage for the August 30 accident. The Hoverters disagree, arguing that the word "available" in exclusion 18 creates an ambiguity in the policy when compared with the policy's definition of a nonowned car and that the ambiguity should be resolved in their favor as the insureds.

■ We find no ambiguity. "Exclusions which are spelled out in clear, unmistakable language and do not alter the insurer's risk will be enforced unless against public policy." *Drollinger v. Safeco Ins. Co. of Am.*, 59 Wn. App. 383, 386, 797 P.2d 540 (1990), *review denied*, 116 Wn.2d 1003 (1991). In the instant case, exclusion 18 uses "clear, unmistakable language" to preclude insurance coverage for damages resulting from the use of any vehicle — other than the vehicle insured under the policy (the Ford truck) — if the vehicle used is "furnished for or available for regular use by" the named insured (Robert and his spouse, Michelle) *or* a resident of the household in which the named insured resides (Sawyer). The facts explicitly show that the Pontiac was furnished for and was available to Robert and Michelle for their regular use.[2] Hence, exclusion 18 precludes coverage unless Sawyer's use was a "special use" within the meaning of *Palmer v. Glens Falls Ins. Co.*, 58 Wn.2d 88, 360 P.2d 742 (1961).

In *Palmer*, the plaintiff (Palmer) had borrowed his son-in-law's car and used it regularly for business for more than 2 months. At one point, Palmer informed his son-in-law that the car needed repairs, and the son-in-law specifically authorized Palmer to drive the car to a particular repair shop for the necessary work.

---

[1] The fact that the Pontiac was not furnished for Sawyer's regular or frequent use is irrelevant, given the use of the disjunctive "or" in section 7.

[2] As with the definition of a nonowned car, the use of the disjunctive "or" in exclusion 18 makes it irrelevant that the Pontiac was not furnished for or available to Sawyer for his regular use.

On the way to the shop, Palmer collided with a truck. A passenger in the truck obtained a judgment against Palmer for damages and, after paying them, Palmer sought a recovery from the insurance company. The trial court dismissed Palmer's suit, concluding that the following exclusionary clause constituted a defense for the insurance company: " 'This insuring agreement does not apply: (1) to any automobile owned by or *furnished for regular use* to . . . the named insured[.]' " *Palmer*, at 89.

On appeal, the court reversed. Although the court agreed that Palmer's use of the car for business was a "regular use" that would fall within the meaning of the exclusionary clause, it held that driving the car to the repair shop was a "special use" that would fall outside the exclusion. In so holding, the court noted that the son-in-law gave "specific authorization and instructions" regarding the special trip to the repair shop. *Palmer*, at 90.

*Palmer* is distinguishable from the present case. First, Sawyer used the Pontiac because his Ford truck was having steering problems. The Hoverters made "regular use" of the Pontiac whenever their other cars were not working properly. McRoy Hoverter loaned the Pontiac to the Hoverters for that very reason. Consequently, Sawyer's use of the car was consistent with the regular use that his parents made of the car. It is irrelevant that Sawyer had not made a "regular use" of the Pontiac himself, because the Pontiac clearly was "furnished for or available for regular use by [Robert and Michelle]", as per exclusion 18.

In addition, unlike *Palmer*, no special authorization or instructions were given to Sawyer as to the use of the Pontiac. Sawyer, in fact, had *no* express authorization to use the Pontiac. Sawyer's use, therefore, was not a special use which would make the exclusionary provision in the policy inoperable. Consequently, the trial court erred by granting the Hoverters' motion for summary judgment and denying PNIC's motion for summary judgment.

The trial court's order is reversed. On remand, the trial court is instructed to enter an order granting PNIC's motion

for summary judgment. Because the Hoverters have not prevailed on appeal, they are not entitled to attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

PEKELIS and AGID, JJ., concur.