[No. 16113-3-II.    Division Two.    August 10, 1994.]

CHARLES W. MATSON, JR., *Respondent,* v. THE CITY OF
TACOMA CIVIL SERVICE BOARD, ET AL, *Appellants.*

*William Barker, City Attorney,* and *Patricia Bosmans, Assistant; Allan R. Billett* and *Comfort, Davies & Comfort,* for appellants.

*Jean Kuharevicz* and *Comfort & Smith,* for respondent.

MORGAN, C.J. — The City of Tacoma appeals from a superior court writ mandating that Charles W. Matson, Jr., be appointed to the position of emergency medical services manager in the Tacoma Fire Department. We affirm in part and vacate in part.

On December 10, 1990, the Tacoma Fire Department submitted a "Personnel Requisition" to the Tacoma Personnel Department. The requisition stated that the fire department wanted to fill, as soon as possible, the civil service position of emergency medical services (EMS) manager. The requisition further stated that the position had been vacant since October 28, 1990, when the previous EMS manager, a person named Edwards, had been promoted to battalion chief. On December 10, there was no existing list of "eligibles"[1] for the EMS position.

Matson and others applied for the position and took a test administered by the City of Tacoma Civil Service Board. On May 24, 1991, this test culminated in a list of eligibles on which Matson ranked first. It is undisputed that only the top-ranking eligible was entitled to be considered for appointment.

During the summer, another applicant challenged the procedures used to establish the list. In September, the civil service board voided the list and ordered a new test.

On October 16, 1991, Matson submitted a "claim for position" to the Tacoma Civil Service Board, pursuant to Tacoma

---

[1]An "eligible" is "a person enrolled on an active eligible list and who has rights under these Rules to be certified for appointment and is willing and able to accept appointment." Tacoma Municipal Code (TMC) 1.24.105.

Municipal Code (TMC) 1.24.960.[2] He asserted that the eligibility list posted in May had been improperly voided; that he was first on that list; and that he was entitled to the EMS position.

On November 18, 1991, the board ruled that the eligibility list had been properly voided. Thus, it denied Matson's claim for position.

Matson then sued in superior court for a writ of mandamus. He asked for reinstatement of the eligibility list posted on May 24, 1991; for appointment to the position of EMS manager; for back pay attributable to that position; and for reasonable attorney's fees. On December 27, 1991, the Superior Court ordered that the list be reinstated, but it did not rule on the remainder of the requested relief.

Notwithstanding reinstatement of the list, the City did not appoint Matson to the EMS position. Thus, on February 14, 1992, he submitted a second claim for position to the Tacoma Civil Service Board.

The board heard this second claim at its meeting on March 16, 1992. According to the board's minutes, Matson and his union representative contended that he was entitled to the position. Both the City's personnel director and deputy fire chief conceded that Matson would be entitled to the position if the fire chief were appointing someone to it; they went on to contend, however, that the fire chief had not appointed anyone, and was not required to do so. The board ruled that Matson was presently entitled to the position, and it directed the fire department to appoint him within 10 days.

---

[2]TMC 1.24.960 provides:

"Whenever any person entitled to certification for employment under the Charter of the City of Tacoma and under the Personnel Rules is deprived of a position to which he/she is entitled . . ., he/she shall file with the Personnel Director and with the Civil Service Board . . . a claim in writing for such position. The Civil Service Board shall have 10 days to investigate and pass upon said claim and if it finds that said person is entitled to said position it shall forthwith certify said fact to the Personnel Director and to the appointing authority, who shall forthwith appoint such person to such position. Such person shall not be entitled to any claim for salary from the City for the period prior to the date of filing of such claim."

While all this was going on, a consultant called "TriData" was evaluating the organizational structure of the Tacoma Fire Department. It appears that TriData began its work in July 1991, and submitted its report, titled a "Resource Allocation Study", in February 1992. Its report stated in part:

> EMS has become an important service and requires a higher level chief to supervise it and to coordinate policy with the emergency medical doctors.

The report went on:

> The EMS function requires more policy and quality control attention than the Deputy Chief of Operations can provide with his or her span of control. The EMS function needs to be managed by a senior officer with paramedic expertise, communications skills, and administrative skills who can work with the emergency medical community to evolve EMS policy and training and keep up with the latest emergency medical advances. This position needs clout, visibility, and respect.

Clerk's Papers, at 268-69. The report recommended that the position of EMS manager be upgraded to an assistant chief's position and removed from the civil service.

Relying on the TriData study and support within the emergency medicine community, the chief of the Tacoma Fire Department decided it was in "the best interest of the Department"[3] to cancel the December 1990 personnel requisition, and "to explore the upgrading of the EMS Manager position."[4] On March 25, 1992, 9 days after the civil service board had granted Matson's claim of position, the chief told the personnel department to cancel the requisition.

On April 24, 1992, Matson filed an amended complaint in superior court, in which he again asked the court to direct the City to appoint him to the EMS position, and to award him back pay and reasonable attorney's fees. On May 8, 1992, the court granted the requested relief, except it did not calculate the exact amount owed by the City for back pay and reasonable attorney's fees.

Although the record is not entirely clear, it appears that on May 16, 1992, the City upgraded the EMS manager's

---

[3]Clerk's Papers, at 237.

[4]Clerk's Papers, at 237.

position to that of an assistant chief. Matson does not contest the validity of this action,[5] which had the effect of removing the EMS position from the classified service.

On July 7, 1992, the Superior Court calculated that Matson was entitled to back pay of $4,944 and reasonable attorney's fees of $7,502. The back pay award covered the period from October 16, 1991, when Matson filed his first claim for position, to May 16, 1992, when the EMS position became noncivil service. The court entered a conforming judgment on July 10, and the City then appealed.

We limit our discussion to back pay and reasonable attorney's fees, for Matson does not now ask to be put into the EMS position. With regard to back pay, we limit our discussion to the period from October 16, 1991 (the date Matson filed his first claim for position) to May 16, 1992 (the date the EMS position was removed from the classified service), for Matson does not claim back pay except during that period.

## I

The main issues are whether Matson was entitled to the EMS position during the period in question, and if so, during what parts of that period. In section I(A), we consider the effect of the City's civil service rules,[6] without regard to the purported cancellation of the requisition on March 25, 1992. In section I(B), we consider the purported cancellation. In section I(C), we consider the proceedings in superior court.

## A

The City's civil service rules create a city service that includes all "positions in the City employ". TMC 1.24.280.

---

[5]Although the record is not clear, it appears from comments at oral argument that Matson was given the upgraded EMS job, or some other job satisfactory to him, on or about May 16, 1992.

[6]Tacoma's civil service rules are not necessarily the same as those contained in RCW 41.08. That chapter does not govern cities or towns which "provide for civil service in the fire department by local charter or other regulations", so long as the local provisions substantially accomplish its purposes. RCW 41.08.010. Tacoma takes the position that it has availed itself of RCW 41.08.010, and that position is not disputed by Matson.

They then subdivide that service into a classified service and an unclassified service. TMC 1.24.290. Positions within the classified service are subject to the City's civil service rules, TMC 1.24.650, while positions within the unclassified service are not.

The classified service includes every "position" not designated as unclassified. TMC 1.24.290(B); TMC 1.24.083. A "[p]osition" is "a group of current duties and responsibilities, assigned or delegated by competent authority, requiring the full-time or part-time services of an employee." TMC 1.24.150.

A "position" can be occupied or unoccupied. *Compare* TMC 1.24.120 *with* TMC 1.24.225. An unoccupied position, however, is not necessarily a "vacancy". The rules expressly state that a "[v]acancy" is "an existing position which is not occupied, and for which funds are available and a valid requisition has been received". TMC 1.24.225. Thus, an unoccupied position is a "vacancy" only if funds are available to fill it and a valid requisition has been received.

The City's civil service rules do not require that an appointing authority fill an unoccupied position. *See* RCW 41.08.100; *Easson v. Seattle,* 32 Wash. 405, 73 P. 496 (1903); *State ex rel. Farmer v. Austin,* 186 Wash. 577, 59 P.2d 379 (1936); *Crippen v. Bellevue,* 61 Wn. App. 251, 257, 810 P.2d 50, *review denied,* 117 Wn.2d 1015 (1991); *Smith v. Board of Walla Walla Cy. Comm'rs,* 48 Wn. App. 303, 738 P.2d 1076 (1987).[7] They do require, however, that an appointing authority fill an unoccupied position that is also a "vacancy", TMC 1.24.640,[8]

---

[7]These authorities deal with civil service rules other than Tacoma's. They apply here by analogy.

[8]TMC 1.24.640 provides:

Vacancies in the Classified City Service *shall* be filled by reemployment, promotional appointment, original appointment, transfer, demotion or reinstatement. Whenever an appointing authority wishes to fill a vacancy, a requisition for an employee shall be submitted to the Personnel Director on the form prescribed by him/her.

(Italics ours.)

The City relies heavily on *Crippen* for the proposition that it has no obligation to fill a "vacancy", notwithstanding the mandatory language of TMC 1.24.640.

although not before a list of eligibles has been established. TMC 1.24.710.[9]

When a person claims that he or she has been wrongfully deprived of a position in the classified service, he or she must make a "[c]laim for position" to the civil service board. TMC 1.24.960. If the board grants the claim, the person is entitled to back pay, but only from the date on which the claim for position was filed. TMC 1.24.960.

Here, the fire chief was the "appointing authority", having been designated as such by the City Manager. *See* TMC 1.24.240(C). The position of EMS manager became unoccupied on October 28, 1990, the date on which Edwards was promoted to battalion chief. The position of EMS manager became a "vacancy" on December 10, 1990, when (1) it was existing and unoccupied, (2) funds were available to fill it, and (3) the personnel department had received a valid requisition from the fire chief. TMC 1.24.225. It took until May 24, 1991, to establish a list of eligibles, but thereafter the fire chief was required to fill the "vacancy". TMC 1.24.640.650; TMC 1.24.710. It follows that Matson was entitled to the position and its salary from October 16, 1991, to May 16, 1992, when the position was removed from the classified service.

## B

■ The City contends that if Matson was entitled to the position before March 25, 1992, he lost his entitlement when, on that date, the fire chief purported to cancel the

Because the appointing authority in *Crippen* had not submitted a requisition, the position there at issue was unoccupied but not a "vacancy", if described in the terms used by the Tacoma Municipal Code. In this case, then, *Crippen* stands for the proposition that the City has no obligation to fill an unoccupied position, but not for the proposition that the City has no obligation to fill a "vacancy" in accordance with the mandatory language of TMC 1.24.640.

[9]TMC 1.24.710 provides in part:

"In the absence of eligible lists, temporary appointments of qualified persons *may* be made until such time as an eligible list is established. Within 45 calendar days from the establishment of an eligible list, the appointing authority *shall* terminate the services of any temporary employee hired and appoint pursuant to Personnel Rule 1.24.650." (Italics ours.)

personnel requisition for the EMS position. We hold, however, that an appointing authority lacks power to cancel a personnel requisition after the civil service board has heard and granted a claim for position, because by then the requisition has been fully executed.[10] After the board has granted a claim for position, the appointing authority can seek review as provided by law, or obey the order pending reclassification of the position. It cannot, however, reverse the order of the board by the simple expedient of canceling its personnel requisition. To hold otherwise would allow the appointing authority to subvert the civil service board's lawfully granted power to hear and determine claims for position, see TMC 1.24.960, and would contravene the fundamental structure of the City's civil service rules.

## C

The City contends that even if Matson was entitled to the position as of October 16, 1991, he waived that right by failing to appeal the Superior Court's order dated December 27, 1991. As a result, the City says, Matson could have no entitlement to the EMS position before February 14, 1992, the date on which he filed his second claim for position.

■■ This argument fails for at least two reasons. First, the Superior Court did not rule on the issue of Matson's entitlement to the EMS position in December 1991. Thus, Matson had no opportunity to appeal on that issue at that time, and he could not have waived any rights by failing to do so. Second, even if the Superior Court had ruled on the issue of Matson's entitlement in December, its December order did not dispose of all claims and all parties in the case. Nor did it embody findings made pursuant to CR 54(b) or RAP 2.2(d). Thus, the December order was not appealable, CR 54(a), *Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 798 P.2d 808 (1990); *Doerflinger v. New York Life Ins. Co.*, 88 Wn.2d 878, 567 P.2d 230 (1977); *Pepper v. King Cy.*, 61 Wn. App. 339, 344-45, 810 P.2d 527 (1991), and Matson could not

---

[10]We have no occasion to consider whether an appointing authority can cancel a personnel requisition *before* the civil service board has heard and granted a claim for position.

have waived any rights by failing to appeal it.[11] We conclude that Matson's entitlement to the EMS position was not altered by his failure to appeal the Superior Court's December 1991 order, and that the trial court did not err by awarding back pay from October 16, 1991, to May 16, 1992.

## II

The remaining issue is reasonable attorney's fees. The Superior Court awarded such fees on the authority of RCW 49.48.030, which provides in pertinent part:

> In any action in which any person is successful in recovering judgment for wages or salaries owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer . . ..

The City first argues that RCW 49.48.030 should not apply because it "never disputed the amount claimed by Mr. Matson", but rather "disputed . . . Mr. Matson's right to a writ and a judgment in their entirety. "[12] This argument is meritless.

The City also argues that Matson should not be entitled to fees incurred before he filed his second amended complaint in February. As before, it reasons that Matson waived whatever rights he otherwise had by not appealing the Superior Court's order dated December 27, 1991. This argument fails for the reasons already discussed, and the trial court did not err in awarding reasonable attorney's fees.

The judgment awarding back pay and reasonable attorney's fees is affirmed. The writ directing that Matson be appointed to the position of EMS manager is vacated as moot. Matson is awarded reasonable attorney's fees and costs on appeal, provided he complies with RAP 18.1.

SEINFELD and HOUGHTON, JJ., concur.

---

[11]According to the record, the first order that disposed of all claims and all parties was the judgment filed on July 10, 1992. Thus, that was the first appealable order in the case.

[12]Br. of Appellant, at 21.