[No. 33398-8-II. Division Two. April 25, 2006.]

CLAIRE L. HALL ET AL, *Appellants*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Respondent*.

*Brett A. Purtzer*, for appellants.

*Robert A. Mannheimer* (of *Robert A. Mannheimer, P.S.*), for respondent.

¶1 VAN DEREN, J. — Claire Hall appeals the trial court's summary judgment order in favor of State Farm Mutual Automobile Insurance Co., Inc., based on the conclusion that Hall's underinsured motorist (UIM) and personal injury protection (PIP) insurance coverage did not cover injuries she sustained while driving her assigned school bus for the Puyallup School District (District). Holding that Hall's use of the school bus constituted "regular use," expressly excluded under her policy, we affirm.

## FACTS

¶2 Hall began working for the District as a substitute bus driver in 1995.[1] In 1998, she became a regular driver and driver-trainer. Five days a week, twice a day, Hall drove the assigned bus and followed the same route. According to District policy, Hall was not allowed to deviate from her route unless forced to by unforeseen circumstances, such as road construction. If Hall needed to deviate from her route,

---

[1] The District hired Hall in December 1994, but she did not become licensed until 1995.

she was required to call the District dispatch and obtain approval.

¶3 Hall's route was about seven or eight miles long and it took about 45 minutes to an hour to complete. Hall worked 4.8 hours a day driving her route and obtaining gasoline and maintenance for the bus.

¶4 On March 29, 2000, Hall was involved in a collision while driving her assigned school bus. She had been driving that specific bus daily since at least January 2000.[2]

¶5 At the time of the accident, Hall had an insurance policy with State Farm. Her PIP coverage provided in pertinent part:

> We will pay for *bodily injury* to an *insured* caused by an *automobile* accident
>
> . . . .
>
> THERE IS NO COVERAGE FOR *BODILY INJURY*:
>
> . . . .
>
> 2. TO *YOU* . . . WHICH OCCURS WHILE *OCCUPYING* A *MOTOR VEHICLE*:
>
> a. *YOU* OWN; OR
>
> b. WHICH IS FURNISHED FOR *YOUR* REGULAR USE.

Clerk's Papers (CP) at 28, 30.

¶6 Hall's UIM coverage stated in pertinent part:

> We will pay damages for *bodily injury* sustained by an *insured* that an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. . . .
>
> THERE IS NO COVERAGE:
>
> 1. FOR *BODILY INJURY* TO AN *INSURED* . . . WHILE AN *INSURED* IS OPERATING OR *OCCUPYING*:
>
> . . . .
>
> b. A MOTOR VEHICLE OWNED, LEASED OR AVAILABLE FOR THE REGULAR USE OF *YOU* OR ANY *RELATIVE*,

---

[2] Hall stated that she did not remember exactly when she began driving that particular bus, but it was either since January 2000 or September 1999.

IF IT IS NOT INSURED UNDER THE LIABILITY COVER-AGE OF THIS POLICY.

CP at 32, 35.

¶7 Hall filed an insurance claim with State Farm under her UIM and PIP coverage.[3] State Farm denied her claim, stating that the bus she drove at the time of the accident was available for her regular use and, thus, she was not entitled to coverage.

¶8 Hall brought a claim for declaratory relief. State Farm moved for summary judgment, which the court granted, finding that her daily use of the bus constituted regular use under the policy. Hall appeals.

## ANALYSIS

¶9 Hall argues that (1) the contract, when read by a layperson, was ambiguous; (2) her use of the bus did not constitute regular use; and (3) an issue of fact existed about whether her use was regular, thereby making summary judgment inappropriate.

### STANDARD OF REVIEW

¶10 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Progressive Nw. Ins. Co. v. Hoverter*, 65 Wn. App. 872, 876, 829 P.2d 783 (1992). The court should grant the motion only if, from all the evidence, reasonable persons could reach but one con-

---

[3] Hall received some compensation for her injuries through other means, but she was not fully compensated.

clusion. *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997).

¶11 Interpretation of an insurance policy is a question of law, which we review de novo. *Quadrant*, 154 Wn.2d at 171. We apply contract principles to interpret insurance policies. *Quadrant*, 154 Wn.2d at 171. We must consider the policy as a whole and give it a " 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' " *Quadrant*, 154 Wn.2d at 171 (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000)). If the language is clear and unambiguous, we must enforce it as written and not create ambiguity where none exists. *Quadrant*, 154 Wn.2d at 171. We will enforce policy exclusions unless they are against public policy. *Hoverter*, 65 Wn. App. at 878.

A. Ambiguity

¶12 An insurance policy clause is ambiguous if it is fairly susceptible to two different interpretations, both of which are reasonable. *Quadrant*, 154 Wn.2d at 171 (quoting *Weyerhaeuser*, 142 Wn.2d at 666). If a clause is ambiguous, we may look to extrinsic evidence to determine the parties' intent and resolve the ambiguity. *Quadrant*, 154 Wn.2d at 171-72. We construe any ambiguity strictly against the insurer and in favor of the insured. *Quadrant*, 154 Wn.2d at 172. But "a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Quadrant*, 154 Wn.2d at 172. And the insured's expectations do not override the contract's plain language. *Quadrant*, 154 Wn.2d at 172.

¶13 Washington courts have routinely held that regular use clauses such as the one in Hall's policy are clear and unambiguous. *See Hoverter*, 65 Wn. App. at 877 (quoting *Grange Ins. Ass'n v. MacKenzie*, 37 Wn. App. 703, 705, 683 P.2d 221 (1984), *aff'd*, 103 Wn.2d 708, 694 P.2d 1087 (1985)); *Nelson v. Mut. of Enumclaw*, 128 Wn. App. 72, 76, 115 P.3d 332 (2005) (the regular use clause was not ambiguous). The language excluding coverage for regu-

lar use has been found " 'plain and "popular" as insurance language can be, and there is no need to construe it.' " *Hoverter*, 65 Wn. App. at 877 (quoting *Grange Ins. Ass'n*, 37 Wn. App. at 705). We agree and find no ambiguity in Hall's policy excluding coverage for regular use of a vehicle not covered by the policy.

## B. Regular Use

¶14 Regular use provisions, such as the one in Hall's policy, are meant to provide coverage for isolated use of a vehicle without requiring the insured to pay an additional insurance premium to insure that vehicle. *Nelson*, 128 Wn. App. at 76. But these provisions do not allow the insured interchangeable use of other cars that the insured's policy does not cover. *Nelson*, 128 Wn. App. at 76.

¶15 Division Three of this court outlined the purpose of regular use clauses as a way to: "(1) prevent an insured from receiving the benefits of coverage by purchasing only one policy and (2) provide coverage to an insured when the insured is engaged in the casual or infrequent use of a nonowned vehicle." *Nelson*, 128 Wn. App. at 76.

¶16 Further, our Supreme Court in *Ross v. State Farm Mutual Automobile Insurance Co.* found that "the 'risk to the insurance company is related only to the amount of time the car is driven, not to the reason it is driven.' " 132 Wn.2d 507, 524, 940 P.2d 252 (1997) (quoting *Grange Ins. Ass'n*, 103 Wn.2d at 712). Insurance companies have a legitimate interest in preventing an increase in coverage risks without a corresponding increase in premiums. *Ross*, 132 Wn.2d at 524. Frequency of the use rather than the purpose of the use is the critical factor in determining regular use. *Nelson*, 128 Wn. App. at 76. Where the underlying facts are not in dispute, whether a use constitutes regular use is a question of law. *Nelson*, 128 Wn. App. at 78.

¶17 Here, the only facts alleged to be in dispute are how many hours Hall drove the bus each day and how long she had been driving the bus involved in the accident.

We construe these facts in her favor and assume that she drives no more than an hour and a half each work day and had driven the bus at least since January 2000. Construing the facts in this manner does not reveal any material issue of fact that precluded summary judgment. *Nelson*, 128 Wn. App. at 78.

¶18 Washington courts have considered several cases determining whether the use of a employer-provided vehicle can constitute regular use. For example, in *Nelson*, Nelson regularly acted as a substitute mail carrier while the regular mail carrier was on vacation. 128 Wn. App. at 74. While substituting, she borrowed the regular mail carrier's vehicle to travel the mail route. *Nelson*, 128 Wn. App. at 74. Nelson injured herself in an accident while driving the route in the regular mail carrier's vehicle. *Nelson*, 128 Wn. App. at 74. Division Three of this court found that this was an excluded regular use under Nelson's UIM policy because her use of the regular mail carrier's vehicle was frequent and predictable. *Nelson*, 128 Wn. App. at 78.

¶19 In *Drollinger v. Safeco Insurance Co. of America*, Division Three applied the regular use exclusion when Drollinger, a deputy sheriff, injured himself while driving his patrol car. 59 Wn. App. 383, 385, 797 P.2d 540 (1990). The court held that an employer-provided car could be excluded from coverage because Drollinger regularly drove the patrol car, and his regular use of the vehicle controlled over the reason he drove it. *Drollinger*, 59 Wn. App. at 388.

¶20 Hall cites *Farmers Insurance Co. of Washington v. Koehler* to distinguish application of the exclusion there from the facts here. 52 Wn. App. 822, 764 P.2d 1005 (1988). In *Koehler*, the insured regularly borrowed a truck to run errands for the truck's owner as well as some personal errands for herself. *Koehler*, 52 Wn. App. at 823. Her insurance policy contained a regular use exclusion. *Koelher*, 52 Wn. App. at 823-24. The court concluded that Koehler had unrestricted use of the truck and it was available to her at any time, thus allowing regular use. *Koehler*, 52 Wn.

App. at 824. The court found, therefore, that the regular use clause in Koehler's policy precluded her from collecting under her UIM policy for injuries she sustained while driving the borrowed truck. *Koehler*, 52 Wn. App. at 824.

¶21 Hall argues that the decision in *Koehler* was determined by the insured's unrestricted use of the truck and, unlike the insured in *Koehler*, Hall did not have unrestricted use of the school bus because the District required that she stay on her prescribed route and not deviate without permission. But the *Koehler* court based its decision on more than the insured's unrestricted use. Unrestricted use was simply a factor in the decision, not a requirement of a regular use finding; the court also pointed to the fact that the insured had regular access to the truck and that she drove it at least a dozen times during a short period of time. *Koehler*, 52 Wn. App. at 824.

¶22 It is clear that the regular use exclusion applies to employer-provided vehicles. *Nelson*, 128 Wn. App. at 77; *Drollinger*, 59 Wn. App. 388. And we must look to the regularity of the use to determine whether the exclusion applies. *Nelson*, 128 Wn. App. at 76; *Drollinger*, 59 Wn. App. at 388. Here, Hall drove the same bus every day for at least three months before the accident. The district assigned her the specific bus, and she drove that exact bus every day. Her use was thus frequent and predictable.

¶23 Although District policies restricted Hall's use, she points to no case law stating that restricted use does not constitute regular use. And it is the frequency of the use rather than the purpose of the use that is the critical factor in determining regular use. *Nelson*, 128 Wn. App. at 76.

¶24 Thus, we find that Hall's daily use of the bus constituted regular use under her insurance policy. Further, since the underlying facts are not in dispute and the question of what is regular use is a question of law, the trial

court did not err in granting summary judgment to State Farm. *See, e.g., Nelson*, 128 Wn. App. at 78.

¶25 We affirm.

QUINN-BRINTNALL, C.J., and HOUGHTON, J., concur.